### Case No. 13,902.

### THOMAS v. LANE.

[2 Sumn. 1.] [1]

Circuit Court, D Maine. Oct. Term, 1813.

ADMIRALTY — JOINT DECREE — APPEAL — TORTS— LOCALITY—SEAMEN—RECEIPT—MASTER.

1. In a libel for a maritime trespass, assault and battery, against two respondents, if there is joint decree for damages, either of the respondents may appeal without joining the other, where the respondents have severed in their pleadings or answers, or jointly pleaded a negative plea in the nature of the general issue. But it seems otherwise, if they had pleaded a joint justification.

[Cited in Atkinson v. The Hamilton, Case No. 611; The Brothers, 7 Fed. 880; The Galileo, 29 Fed. 539.]

2. The admiralty jurisdiction as to torts depends upon locality, and is limited to torts committed on the high seas, or at farthest to torts committed on waters within the ebb and flow of the tide.

[Cited in Leland v. The Medora, Case No. 8,-237; Waring v. Clarke, 5 How. (46 U. S.) 486; New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. (47 U. S.) 421; Bernhard v. Greene, Case No. 1,349; United States v. Wilson, Id. 16,731; Hough v. Western Transp. Co., 3 Wall. (70 U. S.) 33, 34; Bain v. Sandusky Transp. Co., 60 Fed. 913.]
[Cited in Adams v. Haffards, 20 Pick. 130.]

3. It seems that torts committed on tide waters within foreign ports are within the admiralty jurisdiction.

[Cited in Waring v. Clarke, 5 How. (46 U. S.) 487.]

4. The statutes of 13 & 15 Rich. II., respecting the admiralty, do not affect its jurisdiction in foreign ports.

5. Every libel for a tort must contain on its face sufficient averments as to place, to show that it is within the admiralty jurisdiction, otherwise it must be dismissed.

6. A receipt by a seaman on receiving the sum due to him for wages, stating that it is in full for all services, and demands for assault, battery, and imprisonment, &c. against the owner, and officers, is no bar to a suit for an assault, battery, and imprisonment. And if it were, it could not avail the party, unless specially relied on in the answer as matter of defence.

[Cited in The David Pratt, Case No. 3,597; Mitchell v. Pratt, Id. 9,668; Piehl v. Balchen, Id. 11,137; Savin v. The Juno, Id. 12,-390.]

7. Separate and distinct trespasses cannot be joined in the same libel against defendants who are not jointly liable.

8. A master of a ship, when present, is bound to interfere to prevent gross trespasses and misconduct of his officers towards the crew. If he is present when the officers commit an assault and battery, and he does not interfere, when he may, he is presumed to encourage and consent to it, and is jointly liable for the tort.

[Quoted in Hanson v. Fowle, Case No. 6,042.]
[Cited in Gabrielson v. Waydell, 135 N. Y. 13, 31 N E. 969]

Libel for an assault and battery, and imprisonment, brought against Charles Thomas, master, and John M. Jordan, mate, of the brig Moro, by Joseph H. Lane, a seaman of the same vessel, shipped for a voyage on the high seas, to wit: from Portland to Havana, and back to Portland. The libel asserted the assault and battery, and imprisonment, to be in the harbor of Havana; and set forth the circumstances specially. The respondents put in a joint answer, admitting the libellant to have been a seaman on board the brig for the voyage; but denied that they had unnecessarily assaulted the libellant, as he alleged in his libel; and further, Thomas denied that he struck or kicked the libellant, as in his libel set forth; but alleged that he caused the libellant, and several others of his crew, to be imprisoned at Havana, for refusing to obey the orders of the master and his own orders, when directed and commanded to discharge and perform their duty on board the said brig; and Thomas further alleged, that he did not order or direct a Spanish officer or soldier to strike the libellant in the boat, or at any time,—nor did he at any time stand by and countenance the mate in striking or abusing the libellant. And Jordan further answered and denied that he struck the libellant, or knocked him down, or threw him against the windlass, &c., &c., or that he struck or kicked him upon his head or face, &c., &c.; and further, that the libellant, with others of the crew, refused to obey his and the master's lawful orders and command; and that their disobedience was the cause of the imprisonment. No replication was put in by the libellant; and the cause was heard upon the libel, answers and proofs, and a decree was pronounced against both of the respondents, by the district court, for one hundred dollars damages, and costs. The respondent Jordan acquiesced in the decree; but the respondent Thomas interposed an appeal on his own behalf, without joining Jordan.

[1] [Reported by Charles Sumner, Esq.]

STORY, Circuit Justice. The present suit is what is technically called a cause of damage, brought by the libellant, a seaman of the brig Moro, of Portland, against the respondents, the master and mate of the same brig, for an asserted assault and battery (specially set forth) of the libellant, in the harbor of Havana, and an imprisonment of four days, in continuation of the wrong, on shore, in the same port. There is an answer put in by the respondents, in its form joint, but containing several distinct allegations in defence of each of the respondents, in its nature several and not joint. Although the matters thus set forth assert, as to the imprisonment, a justification, and as to the assault and battery, a denial, there is no replication put in by the libellant, (which certainly ought to have been done as to the matters in justification); and the cause was heard (doubtless by consent) upon the libel and answer; and a decree for joint damages was pronounced by the district judge. The respondent Thomas, alone interposed an appeal from this decree, the other respondent not joining in it.

The first point, made at the bar, is, whether, upon this posture of the case, a several appeal can be maintained by the appellant. The ground of objection is, that the libel is for a joint offence, and the answer is joint; so that the parties have staked their cause upon the sufficiency of the defence as a joint defence; and if bad as to either, it is bad as to both,—and in the case of a joint answer and joint defence, there cannot be a severance of the respondents upon the appeal. There is a good deal of embarrassment thrown over the cause by the state of the pleadings; and I exceedingly regret, that neither the libel nor the answer have that regularity and certainty of averments, which in strictness they ought to possess. The libel is not drawn in the regular form of articles, articulating (if I may so say) the grievances in a distinct order, and charging each as a joint act of the master and mate. On the contrary, it seems to be a narrative of the events in the order in which the libellant asserts them to have occurred; and the acts of each of the respondents are charged severally against him, without any joint charge whatsoever attributing each act to both, and only by inference leading to the conclusion of any joint co-operation. The answer is equally embarrassing. It begins by asserting that the respondents jointly deny the assault and bruising of the libellant,—it then proceeds to deny that Thomas struck or kicked the libellant, or that he did the other acts charged against him personally, except the imprisonment, which he justifies, in a very general manner, on account of disobedience of orders. It then proceeds to deny that Jordan struck the libellant or did the other acts charged against him; and concludes with a justification of the imprisonment for the same cause as is

asserted by Thomas,—so that here are joint and several defences mixed up in the same general answer, in regard to matters variously charged in the libel, some of them in form several, and some of them joint. If all the parties were before the court, I should not hesitate, under these circumstances, to direct a reform of the whole pleadings, by suitable amendments; and thus to require the charges in the libel to be jointly made (for several distinct trespasses of the parties severally cannot be properly united in one joint libel), and to allow the respondents to shape their defence accordingly, either jointly or severally, as they should be advised. But Jordan not having appealed, this course cannot be adopted; and the court is driven to the examination of the case, as it stands upon the pleadings in the record.

Upon the state of the pleadings, I know not how to treat the case as either a libel exclusively upon a joint charge, or as a joint answer to such a charge. It seems to me to be a mixture of joint and several charges, with threads of connection which I am unable to disentangle or to unite together. I agree to the doctrine of the common law, that if two or more join in a defence, which is a sufficient justification for one, but no justification for the others, it is bad as to all; for the court cannot sever it, and say, that one is guilty and the others not, when they all put themselves upon the same defence. See 1 Saund. 207, note 3 of Williams, and the authorities there cited; Moors v. Parker, 3 Mass. 310; Schermerhorn v. Tripp, 2 Caines, 108. But, whether the same doctrine applies to libels in the admiralty, may admit of some question; for the admiralty proceeds upon a more liberal and less technical system of pleading than the common law. Trespasses may in their nature be several as well as joint; and therefore one respondent may be found guilty, and the other acquitted of them. But whether a court of admiralty could sever a joint defence for the purpose of abstract justice, upon the coming in of the proofs, where the parties have put themselves upon a joint justification, good as to one, and bad as to another, is more than I feel at liberty at present to affirm. There is no room for the application of the doctrine here; for I cannot judicially say, that the justification is joint, as to all the torts charged upon the parties in the libel.

But the question here is, not so much as to the effect of a joint justification or defence, as it is as to the several right of appeal of the parties charged with a tort in a joint libel. It seems admitted by the argument, that if the parties had severed in their defence (as they clearly might have done), that either of them might have sustained a several appeal. If that be so, it must be upon the ground, that a tort charged as joint may be established by proof of

its being committed by either party; and in such case, that there may be a several decree of guilt as to one, and acquittal as to another. My opinion is, that there is no difference as to the right of appeal, whether the respondents sever or join in their answer or pleadings, if the defence is several in its nature, as a general denial of the matters alleged, in the nature of the general issue; for then there may be a several decree of guilt as to one, and of acquittal as to the other. See 1 Saund. 207a, Williams' note. It may be otherwise, where there is a joint justification by the respondents; for then it is difficult to perceive, how either can separately contest its proof or sufficiency. The more pressing difficulty is, when there is a joint decree against all the defendants for damages in tort, whether one can appeal alone. There is a distinction, well known at the common law, between suits founded upon the joint contract of the parties defendant, and suits founded upon their tort. In the former, the contract must be proved to be joint, as it is charged; in the latter it need not. Upon a joint justification in tort, a writ of error lies only by all the parties to the justification; for all are aggrieved, if any are. But if they plead severally, and some are acquitted and the others are found guilty, the latter may maintain a writ of error alone; for they alone are aggrieved. See 2 Tidd, Prac. p. 1054, c. 43; 2 Saund. 101e, Williams' note. In case of an appeal from a joint decree in chancery against the defendants in the suit, all the defendants affected by the decree must join; but this is because they are united in interest. Owings v. Kincannon, 7 Pet. [32 U. S.] 399. And in suits in the admiralty, founded upon contracts, I should have no doubt, that the appeal must be by all the respondents charged, either personally or in interest, by the decree. But wherever the case, though joint in form, is in reality several in its character, as in cases of salvage, where distinct owners intervene severally, as respondents, each for his own interest, it seems to me, that the decree, though in its form joint, must be treated as several in its operation; and that each defendant must possess a several right of appeal for his own distinct interest. In short, the appeal must be joint, where the interest is joint; and several, where there are distinct and separate interests represented by independent parties in the same suit.

In cases of tort, it seems to me, that the same rule must by analogy prevail, where the defendants have not a joint interest, and do not, by their pleading, assume a joint defence. In personal trespasses, like the present, though the tort should be jointly charged, it is also several in its nature; and one defendant may be found guilty, and the other acquitted. It would seem strange, if the decree of the district court should pronounce for a joint trespass, and give damages accordingly, that one party should not be entitled to an appeal, unless the other would join in it; that one party should not be allowed to establish his innocence upon the appeal, because the other had by his submission to the decree admitted his own guilt. Each defendant in such a case has a distinct and several interest in the suit. He may answer severally, and a final decree may be entered in his favor. And if he denies the whole charge jointly with the other defendant, by a general answer in the nature of the general issue, he is not thereby deprived of this right to a separate acquittal, if the evidence warrants it. Suppose the decree in this case had pronounced Thomas guilty, and had acquitted Jordan. The former might certainly have appealed; for he alone would have been aggrieved by the decree. On the other hand, if the libellant had appealed from the same decree, under the like circumstances, it should seem, that the appeal ought to be against both defendants. For if the appeal were against Jordan alone, the libellant could not have a decree against him for several damages. See Heydon's Case, 11 Coke, 5; Halsey v. Woodruff, 9 Pick. 555; Hill v. Goodchild, 5 Burrows, 2790; 1 Saund. 207a, Williams' note; 2 Tidd, Prac. 804, 805. And if it were against Thomas alone, it would falsify his own charge of a joint trespass upon his own confession. See Heydon's Case, 11 Coke, 5; Harris v. Butterley, Cowp. 483; 2 Starkie, Ev. pt. 4, p. 1442. But, on this, I give no opinion. However, if the decree were for joint damages against both defendants, I do not well see, how the libellant could maintain a separate appeal against one; for that would be to claim several damages against each. But it would be different as to the defendants; for the charge being in its nature several, as well as joint, one might be aggrieved by the decree, when the other was not, and therefore might be entitled to a separate appeal.

I have not been able to find any authorities on this special point; and though the common law modes of proceeding are not strictly applicable to proceedings in admiralty, the doctrines of the common law, as to trespasses, may well furnish principles to guide the admiralty in the expositions of its own practice. My opinion is, that in this case a several appeal well lies by Thomas from the decree for joint damages, upon the ground, that the asserted trespass is several as well as joint, and that Thomas has a distinct and independent interest and responsibility in the suit, unaffected by the decision as to Jordan. The appeal therefore must be sustained.

The appeal, then, being properly before the court, the proceedings may be looked into for all purposes regarding the rights and merits of the parties. And, here, the objections already alluded to, are presented in their full force. The libel is in some parts intended

for a joint charge (whether it states it with all legal precision or not) and in other parts the charge, as it stand⸱, is clearly several, though it may have been intended to be joint. The answer has the same aspects, several in some respects and joint as to others. Now, I think it to be very clear, that separate and distinct trespasses by several persons, charged not jointly but severally, cannot be put into the same libel. If the trespasses are different and distinct, several suits must be brought against the parties; and if they are joined, the libel ought to be dismissed for multifariousness, and a misjoinder of parties. And this is not a mere matter of form, for it may shut ou⁺ the parties respondent, from the testimony of each other, which they would be entitled to in separate suits. The present case illustrates these remarks; for if there had been separate suits brought against Thomas and Jordan, they might have been witnesses for each other under circumstances giving their testimony a peculiar importance.

There is another consideration touching the libel, which presents a more direct admonition to the court respecting its own jurisdiction in admiralty. It is no where alleged in the libel, that the trespasses complained of were committed on the high seas, or within the ebb and flow of the tide. It is only said in general terms, that they were committed in the port of Havana; and a part of the charge, viz., the imprisonment of the libellant, is distinctly stated to have been on shore in that port. In regard to torts I have always understood, that the jurisdiction of the admiralty is exclusively dependent upon the locality of the act. The admiralty has not, and never (I believe) deliberately claimed to have any jurisdiction over torts, except such as are maritime torts, that is, such as are committed on the high seas, or on waters within the ebb and flow of the tide. With respect to the former, viz., torts upon the high seas, the courts of common law have admitted the jurisdiction. See Lord Nottingham's remarks in 3 Swanst. 605, 606. With respect to the latter, viz., torts committed on tide waters, the courts of common law have denied the jurisdiction, where those waters are within the body of any country within the realm. But I am not aware, that it has been solemnly decided, that the like doctrine applies to tide waters in foreign countries, where the distinction of countries is unknown; for the statutes of 13 & 15 Rich. II., upon which this limitation of jurisdiction is founded, manifestly, oy their very terms, apply only to the realm of England, and not to tide waters in foreign countries. My own judgment has always hitherto inclined to the opinion, that at least as to torts upon tide waters in foreign countries, the jurisdiction of the admiralty attacned, seeing that it was its ancient right, and not within the prohibitions of the statutes of Rich. II. See De Lovio v. Boit [Case No. 3,776]. It is, however, a grave question, to which my mind has not been latterly drawn; and I am not aware, that it has ever come under a very solemn review ·in this country. But be this as it may, and assuming the jurisdiction to be rightful in cases of torts on waters within⸱ the ebb and flow of the tide in foreign ports, it is indispensable, to found the jurisdiction, that it should be so stated in the libel; for the court cannot intend, or infer, that it has jurisdiction; but it must be positively stated. The court cannot judicially know, that the tide ebbs and flows in the harbor of Havana, or that all parts of that port are within the ebb and flow of the tide, or that all vessels at all times float therein on tide waters. And the difficulty is here increased by the fact, that the gravamen is mixed up with a tort, of which the court clearly has not jurisdiction, that is to say, the imprisonment on shore; and the frame of the libel does not admit, even if the court were at liberty to unravel it, of a perfect separation of one part of the charge from another. If both of the defendants were by the appeal before the court, this matter might be helped by an amended libel; but in the actual posture of the cause, this cannot be done., So that at least as to Thomas, the libel would seem to be unmaintainable, and ought to be dismissed for want of jurisdiction.

If this objection could be surmounted, it would be proper to go somewhat at length into the other points of the cause. One of them is the supposed acquittance (for not being under seal it cannot be deemed a release) on the back of the shipping paper, by which the seamen respectively, and among others, the libellant, acknowledge themselves to have received the sums set against their names, "it being in full for our services, and of all demands for assault and battery, and imprisonment, and of whatever name or nature against the said brig. her owners and officers." To such a receipt, given upon the mere payment of wages, and without any distinct compromise, satisfaction or compensation for trespasses, it can hardly be supposed, that any court would listen as a bar to a suit of this nature. It must, under such circumstances, be treated as a paper obtained by fraud, surprise, or undue advantage taken of the party's situation, even if it could otherwise operate in point of law as an extinguishment of the right of action. In the present case, however, it is not set up as a defence in the answer, and therefore it cannot be judicially taken notice of by the court

Another point, upon which some stress is laid in the argument, is, as to the liability of the master for the trespasses of his officers. The principles of law upon this ·subject appear to me to be equally clear and salutary in point of policy. The master has the supreme authority on board of his ship; and has, moreover, a sort of parental responsibility and duty devolved upon him, for the

due ·exercise of it. It is his duty to prevent, as fa·· as he may, any undue exercise of authority by his subordinate officers, and any abuses, injuries and trespasses by them. If he is present, when any of the subordinate officers inflict chastisement upon the crew, he is bound in duty to interfere, and restrain it, if it is improper in its nature or character, or unjustifiable under the circumstances. If he may interfere, and he does not, he must be deemed to assent to, and encourage it; for no officer in his presence has any right to inflict punishment without his assent or direction, unless upon an emergency, which admits of no delay. It is not sufficient for him to excuse ·himself from this interposition, upon any notions of courtesy, or of upholding the authority of the officers, or of supporting the harmony and discipline of the ship. The law has entrusted him with summary powers, for the good, not of the officers alone, but of the crew also, and indeed for the general good of the maritime service, in which he is engaged. While he should uphold the just discipline of the ship with a steady confidence, he is to take care, that the crew are not made the victims of the insolence, the passions, or the caprices of the officers under him. If he will stand ·by, and see the seamen cruelly, brutally and unjustifiably beaten without interference, he ought not to complain, that the law forces upon him the conclusion, that he approves what is done, and means to encourage it by his silence and his authority. He becomes thereby the abettor and supporter of the deed, upon the reasonable ground, that he, who knowingly allows oppression, shares the crime. Such, in my opinion, is the dictate of the law on this subject; and it is wholesome as an admonition and a preventive against the undue resentment and oppression of officers, which so often end in the open mutiny and rebellion of the injured crew. On this head I follow out, with unhesitating confidence, the able argument of the learned counsel for the libellant.

The view, which has already been taken of the case, upon the point of jurisdiction, renders it unnecessary to consider the merits ·of the controversy, which have been so elaborately and analytically brought out in the argument, and to the force and acuteness of which no one is more ready to pay a voluntary homage than myself. My duty is to dismiss the libel, as to the appellant, the only party before the court, for want of jurisdiction; but there can be no costs allowed, where the court dismisses the suit, for such a cause. Libel dismissed.