## NETHERLANDS AMERICAN STEAM NAV. CO. v. GALLAGHER.

(Circuit Court of Appeals, Second Circuit. March 8, 1922.)

### No. 142.

1. Admiralty ⟜10—Whether contract is maritime depends on subject-matter.
   Whether or not a contract is maritime depends, in this country, on the subject-matter of the contract, and not on the place where it is made.

2. Admiralty ⟜10—Contract relating to ship, or commerce on navigable waters, is maritime.
   If a contract relates to a ship, or to commerce on navigable waters, it is subject to the maritime law, and is within the admiralty and maritime jurisdiction, whether it is to be performed on land or water.

3. Admiralty ⟜13—Stevedore's contract maritime.
   The contract of a stevedore, employed in loading or unloading a ship, is maritime.

4. Admiralty ⟜18—Has jurisdiction of tort committed on navigable waters.
   The admiralty court has jurisdiction of a suit to recover damages for a maritime tort that occurs on navigable waters, which afford a highway over which commerce may be carried on with other states or foreign countries.

5. Admiralty ⟜18—Tort committed on wharf not maritime.
   Wharves are a part of the land to which they are attached, whether or not they project over the water, and injuries done on them are not maritime torts.

⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. Admiralty ⬡18—Whether a tort is maritime depends on place where injury is received.**

Whether or not a tort is a maritime one depends on the locality of the person or thing injured at the time the injury is inflicted, whether on land or navigable waters.

**7. Admiralty ⬡18—Has jurisdiction of maritime tort, regardless of nationality of vessel or parties.**

If a tort is maritime, admiralty has jurisdiction, without reference to the nationality of the vessel on board of which it was committed or that of the parties to it.

**8. Admiralty ⬡18—Maritime torts include injuries through negligence.**

The term "tort," when used with reference to the admiralty jurisdiction, is not confined to wrongs or injuries committed by direct force, but includes those suffered in consequence of the negligence or malfeasance of others, when the remedy at common law is by action on the case.

**9. Courts ⬡371(5)—Federal court may enforce remedy given by state statute.**

While a suit by a citizen of a state against a corporation of a foreign country to recover for an injury received on a wharf is not within the admiralty jurisdiction, the District Court has jurisdiction, by reason of the citizenship of the parties, to enforce such remedy as is given by the laws of the state where the injury occurred.

**10. Admiralty ⬡13—Contract of employment in unloading ship is maritime, though service is entirely on a pier.**

A contract of employment in loading or unloading a ship is one of stevedoring, and maritime, though the service thereunder is performed entirely on a pier.

**11. Admiralty ⬡20—Nonmaritime tort not rendered maritime because person injured was working under maritime contract.**

A tort plainly nonmaritime, because its locality was not on navigable waters, is not to be regarded as maritime, and so brought within the exclusive jurisdiction of admiralty, because the person injured was at the time rendering service under a maritime contract.

**12. Admiralty ⬡20—Suit for injury to stevedore on wharf not within admiralty jurisdiction.**

A suit for injury to a stevedore, while working on a pier, *held* not within the maritime jurisdiction, but within the jurisdiction of the courts of the state where the injury occurred, but one to which the state Workmen's Compensation Act applies, if, on the pleadings and proof, it appears that such act furnishes the exclusive remedy.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by James Gallagher against the Netherlands American Steam Navigation Company. Judgment for plaintiff, and defendant brings error. Reversed.

This is an action to recover damages for personal injuries, and negligence is charged against the plaintiff in error, hereinafter called the defendant. Judgment has been obtained against it in the sum of $5,000. The plaintiff is a citizen of the state of New Jersey, and at the time of the injury complained of was employed by it in the unloading of the cargo of the steamship Rotterdam at the pier in Hoboken, N. J. The defendant, by whom the plaintiff was employed at the time of his injury, is an alien corporation, created under the laws of the kingdom of Holland, and was engaged at all the times herein involved in maritime commerce between the United States, England, France, and Holland. It is the owner of the steamship Rotterdam. It has its principal office at Rotterdam, Holland, but it also maintains an office for the regular transaction of business in the city of New York.

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The plaintiff began his work of unloading the ship on Saturday, April 2, 1921. The injury occurred on the following Tuesday at about 2:15 p. m. Prior to this particular job, he had worked as a stevedore for about a year, but had had no experience in unloading rolls of paper. The method of unloading the cargo was to have each separate package, described in the testimony as a "draft," raised out of the hold by a winch and lowered to the edge of the dock, where the plaintiff and other stevedores were waiting with hand trucks to receive them. The draft would be lowered on top of the truck, the sling unhooked, and the draft would then be trundled over on the truck to that part of the dock where the rolls of paper were to be piled up. The cargo consisted of bags, bales of rags and rubber, and also a number of large rolls of paper. These rolls were about 6 feet long and 3 feet in diameter. After about eight of these rolls had been unloaded, a further roll of paper was lowered to the truck, and the plaintiff had released the hook which attached the roll to the fall, he turned around to get another sling, which it was the practice of the men to attach to the hook, so that it might be returned to the ship and be put around the next draft to be hoisted out. As the plaintiff was stooping down to pick up this sling, the heavy roll of paper rolled off the hand truck on top of the plaintiff, and crushed his leg against the net or save-all which was stretched from the edge of the dock to the side of the steamer, to prevent any of the cargo from falling into the water in the process of unloading. The truck used was about 7 feet long, with a perfectly flat surface, and with a steel plate at the end, but otherwise without guards or projections. It had two iron legs supporting the handles. The truck was operated by the plaintiff's mate by the name of Leese. After the truck was loaded, it was Leese's duty to trundle it over to the place on the dock where the roll of paper was to be unloaded, and it was the plaintiff's duty to steady the roll while it was being so trundled. At the moment of injury the truck was level with the dock; Leese not having yet lifted it.

Benjamin C. Loder, of New York City (E. C. Sherwood and Clarence S. Zipp, both of New York City, of counsel), for plaintiff in error.

Solomon Ullman, of New York City (George M. Curtis, Jr., and Harold R. Medina, both of New York City, of counsel), for defendant in error.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). This case presents an interesting and important question, involving the jurisdiction of the courts of the United States and the applicability of the laws of a state to the cause of action which the plaintiff asserts. As the plaintiff at the time of his injury was performing service as a stevedore in unloading an ocean steamer at her pier in Hoboken, and the injury happened to him on the pier, it is necessary, in determining the issues involved, to consider the limits of the admiralty and maritime jurisdiction of the federal courts.

The limits of the admiralty and maritime jurisdiction, as distinguished from the jurisdiction of the common-law courts, have not been precisely defined, and this fact has led to much embarrassment and controversy. In England the courts of admiralty have exercised a more limited jurisdiction than the like courts in Ireland, and in Scotland the admiralty courts have exercised a more comprehensive jurisdiction than the same courts have enjoyed in either Ireland or in England; and as Judge Story in his Commentaries on the Constitution, vol. 2, p. 450, points out, the limits of the admiralty jurisdiction have been a matter of "heated controversy" between the courts of common law

and the High Court of Admiralty in England, with alternate success and defeat. In the United States the courts of admiralty have exercised a much more extensive jurisdiction than have the like courts in England.

For a time there was perhaps no subject in this country concerning which the rulings of the federal courts were so wanting in uniformity as upon the admiralty jurisdiction. It is still true that on some matters pertaining to this jurisdiction much uncertainty still prevails, to the embarrassment of courts and litigants. In 1861 Mr. Chief Justice Taney, in The Steamer St. Lawrence, 1 Black, 522, 527, 17 L. Ed. 180, after referring to the fact that circumstances rendered it difficult to define the exact limits of the admiralty and maritime jurisdiction of the United States, said:

"And the reports of the decisions of this court will show that the subject has often been before it, and carefully considered, without being able to fix with precision its definite boundaries; but certainly no state law can enlarge it, nor can an act of Congress or rule of court make it broader than the judicial power may determine to be its true limits."

The Constitution (article 3, § 2) provides that the judicial power of the United States shall extend to all cases of admiralty and maritime jurisdiction. The jurisdiction thus conferred embraces two classes of civil cases. The first respects acts or injuries done upon navigable waters. The second respects contracts purely maritime, and touching rights and duties pertaining to commerce and navigation. The first of these classes is usually divided into two subdivisions—one embracing captives and questions of prize arising jure belli; and the other acts, torts, and injuries of civil cognizance, independent of belligerent operations. 2 Story, Com. on Const. (4th Ed.) § 1666. The admiralty and maritime jurisdiction extends, then, to maritime contracts and to maritime torts. And as the cause of action in the case now before the court is not one brought on the contract, but is one brought to recover for the tort, which tort is not maritime, it is not one which is within the admiralty and maritime jurisdiction.

The Judiciary Act of 1789, which vested in the courts of the United States exclusive jurisdiction of all civil causes of admiralty and maritime jurisdiction, contained a provision saving to suitors in all cases the right of a common-law remedy, where the common law is competent to give it. 1 Stat. 77, § 9. That provision has never been repealed, and has been held constitutional. The Moses Taylor, 4 Wall. 411, 18 L. Ed. 397. It is not a remedy in the common-law courts which is saved, but a common-law remedy. So it has been held that a mariner may sue in a state court in personam to recover his wages, as the common law is as competent as the admiralty to give him a remedy in such a case. Leon v. Galceran, 11 Wall. 185, 20 L. Ed. 74. In such cases, the contract being maritime, the state and federal courts exercise a concurrent jurisdiction. But in cases of tort, if the tort is non-maritime, it is not within the maritime jurisdiction, and relief is to be had in a common-law action in the state courts.

The admiralty jurisdiction, of course, extends to maritime contracts; for such contracts are regulated and enforced by maritime law. Ben-

edict's Admiralty (4th Ed.) § 143. Assuming that the plaintiff was employed as a stevedore, his contract to render service in loading or unloading a ship is to be regarded as a maritime contract. In the case of New Jersey Navigation Co. v. Merchants Bank, 6 How. 344, 12 L. Ed. 465, Mr. Justice Nelson, speaking for the court as to the admiralty jurisdiction in matters of contract, stated that the inquiry was as to—

"the nature and subject-matter of the contract, whether it was a maritime contract, and the service a maritime service, to be performed upon the sea or upon waters within the ebb and flow of the tide."

The last distinction, based on the ebb and flow of the tide, has since been abrogated by later decisions of the court; for since the case of The Propeller Genesee Chief v. Fitzhugh, 12 How. 443, 13 L. Ed. 1058, decided in 1851, it has been established that the admiralty and maritime jurisdiction of the federal government is not limited to tide waters but extends to all public navigable waters where commerce is carried on between the states or with a foreign nation. And in The Robert W. Parsons, 191 U. S. 17, 24 Sup. Ct. 8, 48 L. Ed. 73, decided in 1903, it was declared to extend to the Erie Canal, although wholly within a single state, as being a great highway of commerce between ports in different states and foreign countries. In The Belfast, 7 Wall. 624, 19 L. Ed. 266, Mr. Justice Clifford, speaking of the jurisdiction of the admiralty in matters of contract, stated that it depended on the nature of the contract.

[1] The question whether a contract is maritime or not depends in this country simply on the subject-matter of the contract, and not on the place where the contract is made. While the contrary rule was established in England, it was not without protest, and in Menetone v. Gibbons, 3 Term, 269, Lord Kenyon recognized the absurdity of the English rule and said:

"If the admiralty has jurisdiction over the subject-matter, to say that it is necessary for the parties to go upon the sea to execute the instrument borders upon absurdity."

The English courts have placed a more restricted construction upon the limits of the admiralty jurisdiction than have the courts of the United States. As was pointed out by Mr. Justice Bradley in Insurance Co. v. Dunham, 11 Wall. 1, 24, 20 L. Ed. 90, it has been held in England with respect to contracts that, with the exception of the cases of seamen's wages and bottomry bonds, no contract was allowed to be prosecuted in the admiralty, unless it was made upon the sea, and was to be executed upon the sea; and even then it had to be under seal. But the courts of the United States have taken a more enlarged view of the subject.

[2] If a contract relates to a ship or to commerce on navigable waters, it is subject to the maritime law, and is within the admiralty and maritime jurisdiction, whether the contract is to be performed on land or water. Benedict's Admiralty (4th Ed.) § 145. "Toutes affaires relatives a la navigation at aux navigateurs appartient au droit maritime." 3 Pard. Lois Mar. 451.

[3] In a recent case the Supreme Court has declared that it entertained no doubt that the service of a stevedore in loading and stowing a ship's cargo is a maritime service, one absolutely necessary to enable the ship to discharge its maritime duty, and that it has become a specialized service, devolving upon a class "as clearly identified with maritime affairs as are the mariners." Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 61, 62, 34 Sup. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157. And see Benedict's Admiralty (4th Ed.) § 207. All maritime contracts are, of course, within the admiralty jurisdiction. 1 C. J. 1265.

While the plaintiff's contract was plainly a maritime contract, if he was employed to render a stevedoring service, and one consequently within the admiralty jurisdiction, if suit had been brought upon it, the important fact here is that the present action is not brought upon the contract; and as this is not a suit ex contractu it is of no consequence that the admiralty and maritime jurisdiction extends to maritime contracts, unless it be for a reason hereinafter mentioned.

Inasmuch as the action is one ex delicto, we must inquire whether the tort complained of is a maritime tort. If it be such a tort, it is within the admiralty jurisdiction; otherwise not, as will appear more fully as we proceed.

[4, 5] The injury to the plaintiff happened on the wharf—in other words, upon the land; for it is clearly established that wharves and bridges, being fixed and immovable, are a part of the land to which they are attached, whether they project over the water or not. Injuries done upon them are not maritime torts; consequently they are not within the admiralty jurisdiction, because not done upon the sea. The Rock Island Bridge, 6 Wall. 213, 18 L. Ed. 753; The Neil Cochran, 1 Brown's Adm. 162, Fed. Cas. No. 7,996; The Ottawa, Brown's Adm. 356, Fed. Cas. No. 10,616. In the Rock Island Bridge Case the court held that, though bridges and wharves may aid commerce by facilitating intercourse on land, or the discharge of cargoes, they constitute no part of the high seas or navigable waters, and no maritime lien can arise with reference to them, as in the case of vessels, steamers, and rafts, and upon goods and merchandise thereon.

[6, 7] The admiralty has jurisdiction of a suit to recover damages for a maritime tort that occurs on navigable waters, which afford a highway over which commerce may be carried on with other states or foreign countries. The Montello, 20 Wall. 430, 22 L. Ed. 391. If the tort is maritime, the admiralty has jurisdiction, without reference to the nationality of the vessel on board of which it may have been committed, or that of the parties to it. Bernhard v. Creene, 3 Fed. Cas. 279, No. 1,349. And the test by which it is determined whether the tort is a maritime one depends upon the locality of the person or thing injured at the time the injury is inflicted. In Thomas v. Lane, 2 Sumn. 1, 9, 23 Fed. Cas. 957, No. 13,902, Mr. Justice Story, in 1813, declared that he had always understood that the jurisdiction of admiralty was exclusively dependent upon the locality of the act. This rule has since been frequently declared by the Supreme Court. Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 59, 34 Sup. Ct. 733, 58 L.

Ed. 1208, 51 L. R. A. (N. S.) 1157; Martin v. West, 222 U. S. 191, 32 Sup. Ct. 42, 56 L. Ed. 159, 36 L. R. A. (N. S.) 592; Panama R. Co. v. Napier Shipping Co., 166 U. S. 280, 17 Sup. Ct. 572, 41 L. Ed. 1004; Atlee v. Northwestern Union Packet Co., 21 Wall. 389, 22 L. Ed. 619; The Rock Island Bridge, 6 Wall. 213, 18 L. Ed. 753; The Steamboat Hine v. Trevor, 4 Wall. 555, 18 L. Ed. 451; The Plymouth, 3 Wall. 20, 18 L. Ed. 125; Philadelphia, etc., R. Co. v. Philadelphia, etc., Steam Towboat Co., 23 How, 209, 16 L. Ed. 433.

[8] The term "tort," when used in reference to the admiralty jurisdiction, has been held not to be confined to wrongs or injuries committed by direct force, but to include those suffered in consequence of the negligence or malfeasance of others, when the remedy at common law is by action on the case. Leathers v. Blessing, 105 U. S. 626, 26 L. Ed. 1192.

The dividing line between the admiralty and the common-law jurisdiction is correctly stated in Benedict's Admiralty (4th Ed.) § 232. It is there pointed out that the American courts have drawn the dividing line according to the locality where the substance and consummation of the injury has occurred. Thus he shows by the cases that where a pier was damaged by the collision of a vessel therewith, that where, by the explosion of a tug's boiler, a person was killed while standing on a pier, that where sparks from a vessel's boiler set fire to structures on shore, that where a fire originating on a vessel spread to buildings on the land, in each of these cases claims for the loss were held to be not within the jurisdiction of the admiralty. And in Bain v. Sandusky Transportation Co. (D. C.) 60 Fed. 912, it was held that a claim against a shipowner for the alleged wrongful arrest on shore of a deserting seaman was not within the admiralty jurisdiction.

It is accordingly clear, we think, that the injury done to the plaintiff on the dock was not within the jurisdiction of the admiralty, unless brought within it by the fact, hereinafter considered, that the plaintiff was employed at the time of his injury under a maritime contract; and we do not think, for a reason subsequently stated, that that fact affects it. It certainly was not a maritime tort. As the tort is non-maritime, and the action is not on the maritime contract, the plaintiff's remedy would seem to be such as is given to him under the laws of the state within which the cause of action arose.

[9] It happens, however, that the plaintiff is a citizen of the United States, residing in the state of New Jersey, and that the defendant is an alien corporation; and while the action is one which cannot be brought into the United States court as a court of admiralty, the plaintiff nevertheless is entitled, because he is a citizen and the defendant is an alien, to bring into that court whatever action, if any, he is entitled to bring under the laws of the state in which the injury occurred. In re Hohorst, 150 U. S. 653, 14 Sup. Ct. 221, 37 L. Ed. 1211. The District Court has jurisdiction, and can hear and determine the controversy. Barrow Steamship Co. v. Kane, 170 U. S. 100, 18 Sup. Ct. 526, 42 L. Ed. 964.

This brings us to the consideration of a question which has proved a troublesome and perplexing one in other cases of a somewhat similar

character. The defendant in its answer alleged as a separate defense to the complaint that the injuries sustained by the plaintiff were sustained within the state of New Jersey, and that the Workmen's Compensation Act of that state applied, and afforded the plaintiff his exclusive right and remedy. At the close of the whole case the defendant's counsel on the same ground moved to dismiss the complaint. In doing so he stated, however, that he made the motion as a matter of protection only, and that he did not actually believe that the New Jersey act applied. The court took the same view, and declined to dismiss the complaint. This is assigned as one of the errors committed.

In 1917 the Supreme Court decided Southern Pacific Co. v. Jensen, 244 U. S. 205, 37 Sup. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900. In that case a stevedore, engaged on an interstate ship in unloading her at a wharf in navigable waters in New York, was accidentally injured and killed. His work consisted in driving a truck into the steamship, where it was loaded with lumber, and then driving the truck out of the vessel upon a gangway connecting the vessel with the pier, and thence upon the pier where the lumber was unloaded. After several trips of this kind, he started out of the ship with his truck loaded with lumber, and as he went out failed to lower his head, and his neck was broken. An award of compensation was made against the ship owner by the New York Workmen's Compensation Commission. The New York Court of Appeals held the New York statute applicable in 215 N. Y. 514, 109 N. E. 600, L. R. A. 1916A, 403, Ann. Cas. 1916B, 276. But the Supreme Court reversed the case and said:

"If New York can subject foreign ships coming into her ports to such obligations as those imposed by her compensation statute, other states may do likewise. The necessary consequence would be destruction of the very uniformity in respect to maritime matters which the Constitution was designed to establish, and freedom of navigation between the states and with foreign countries would be seriously hampered and impeded."

It is to be noted, however, that in the Jensen Case, unlike the case now before the court, the tort for which the action was brought was a maritime tort, having occurred on the water, and was within the exclusive jurisdiction of the admiralty.

In 1917, in Chelentis v. Luckenbach, 247 U. S. 372, 38 Sup. Ct. 501, 62 L. Ed. 1171, a person employed on a steamship as fireman lost his leg, having been injured while in the performance of his duties; the vessel being at sea. He brought a common-law action in a state court to recover damages, and the action was removed into the United States District Court because of diverse citizenship. Under the maritime law the seaman was entitled to recover only for maintenance, cure, and wages. He claimed, however, to be entitled by the law of the state of New York to recover full common-law indemnity. But the Supreme Court held, affirming the decision of this court in 243 Fed. 536, 159 C. C. A. 234, L. R. A. 1918F, 991, that the liability which existed under the maritime law was not subject to be enlarged to full common-law indemnity by the law of the state. It was declared that no state has power to abolish the well-recognized maritime rule concerning

measure of recovery, and substitute therefor the full indemnity rule of the common law. But that case differed from this, also, in that the tort for which recovery was sought was maritime, being committed on the sea.

In 1919, in Union Fish Co. v. Erickson, 248 U. S. 308, 39 Sup. Ct. 112, 63 L. Ed. 261, a master sought to recover damages for breach of an oral contract with the owner of a vessel for services to be performed chiefly on the sea. The defense interposed was that the contract was invalid under a statute of California, where the contract was made, because it was not in writing and not to be performed within a year. The court held:

"The Circuit Court of Appeals correctly held that this contract was maritime in its nature, and an action in admiralty thereon for its breach could not be defeated by the statute of California relied upon by the petitioner. * * * In entering into this contract the parties contemplated no services in California. They were making an engagement for the services of the master of the vessel, the duties to be performed in the waters of Alaska, mainly upon the sea. The maritime law controlled in this respect, and was not subject to limitation because the particular engagement happened to be made in California. The parties must be presumed to have had in contemplation the system of maritime law under which it was made."

In 1920 the court decided Knickerbocker Ice Co. v. Stewart, 253 U. S. 149, 40 Sup. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145. In that case Stewart was employed by the ice company as a bargeman, and was doing work of a maritime nature, and while so engaged fell into the Hudson river and was drowned. His widow claimed under the Workmen's Compensation Law of New York (Consol. Laws, c. 67), and the Industrial Commission of that state granted an award against the company for her and her minor children, and the state Court of Appeals approved it. 226 N. Y. 302, 123 N. E. 382. The Supreme Court reversed the case, and held that the Workmen's Compensation Law of New York was inapplicable, as the case was within the exclusive jurisdiction of the admiralty. That case also differs from the one now before us in the probable fact that the tort was maritime, and occurred on the water, as it appears that he was employed as a bargeman and fell into the river.

In Western Fuel Co. v. Garcia, 257 U. S. 233, 42 Sup. Ct. 89, 66 L. Ed. ——, decided by the Supreme Court on December 5, 1921, and not yet [officially] reported, the facts were as follows: A person who was employed as a stevedore on a vessel anchored in San Francisco Bay, and, discharging her cargo, was killed in the hold of the vessel. He was working under a maritime contract, and was killed by coal which it was alleged was negligently permitted to fall from a steel hoisting bucket. The California Code gave a right of action for death caused by wrongful act or negligence. The court held that, although by the general maritime law no suit could be maintained in the admiralty courts of the United States, nevertheless, where death upon navigable waters follows from a maritime tort committed on such waters, within a state whose statutes give a right of action on account of death by wrongful act, the admiralty courts will entertain a libel in personam

for the damages sustained by those to whom such right is given. The court declared:

"The subject is maritime and local in character, and the specified modification of or supplement to.the rule applied in admiralty courts, when following the common law, will not work material prejudice to the characteristic features of the general maritime law, nor interfere with the proper harmony and uniformity of that law in international or state relations."

And the court held the California local act applicable, and also applied the local statutory limitation, which required such actions to be brought within one year.

In Grant Smith-Porter Ship Co. v. Rhode, 257 U. S. 469, 42 Sup. Ct. 157, 66 L. Ed. ——, decided by the Supreme Court on January 3, 1922, and not yet [officially] reported, the facts were as follows: At the time Rhode was injured he was at work as a carpenter on a partially completed vessel lying at a dock in the navigable waters of the Willamette river. The contract for the construction of the vessel was nonmaritime. In that respect the case differed from the Jensen Case, the Chelentis Case, the Erickson Case, and the Stewart Case, in all of which the contract was maritime; but the injury involved a maritime tort, as it happened on navigable waters. Yet the court held that the exclusive features of the Oregon Workmen's Compensation Act applied, and abrogated the right to recover damages in an admiralty court, which would otherwise exist. The court, contrasting the case with the other cases above referred to, said:

"In each of them the employment or contract was maritime in nature, and the rights and liabilities of the parties were prescribed by general rules of maritime law essential to its proper harmony and uniformity. Here the parties contracted with reference to the state statute their rights and liabilities had no direct relation to navigation, and the application of the local law cannot materially affect any rules of the sea whose uniformity is essential."

The cases show that, even where the admiralty jurisdiction exists, that fact does not necessarily prevent the application of the provisions of the Workmen's Compensation Act of a state, if its provisions do not work material injury to characteristic features of the general maritime law. A fortiori the provisions of the Workmen's Compensation Act may be applied to a case such as the one now before the court, and which is not within the admiralty jurisdiction; for in such a case it cannot be said that any injury whatever can result to the characteristic features, or indeed to any features, of the general maritime law, as that law cannot be involved therein. The case now before the court seems to be just such a case as Mr. Justice Holmes had in mind in his dissenting opinion in the Stewart Case, when, referring to the Jensen Case, he said that the question in that case was:

"Whether there was anything in the Constitution or laws of the United States to prevent a state from imposing upon an employer a limited, but absolute, liability for the death of an employee upon a gangplank between a vessel and a wharf, *which the state unquestionably could have imposed,* had the death occurred on the wharf."

[10] In what has been said it has been assumed that the plaintiff was working under a maritime contract and was a stevedore. But as

it may be said that this man was not a stevedore, but a mere land laborer, we deem it proper to make the following comment on that proposition: It is true that according to his own testimony the plaintiff never went aboard the ship, and all his work was done on the dock; but it consisted, as we have seen, in taking the cargo, as it came over the ship's side, to the dock, on a hand truck, and moving it to a designated place on the dock, where it was to be deposited. Now this, in the opinion of at least a majority of the court, was as much a stevedoring service as though the man actually went upon the ship and moved the cargo on a truck to the ship's rail, and assisted in lowering it over the ship's side. It is all part of the one transaction, and the acts done on the ship and the acts done on the dock were equally essential to the ship's unloading. It is the subject-matter of the contract, and not the place where the act is performed, that determines whether a contract of service is maritime or not. Thus a contract to repair a ship is maritime, although all the work may be done on the land, as where the ship has been taken out of the water and put on the land; and the unloading of a ship is a maritime service equally, for the man who is working to unload, whether he renders the service on the dock or on the ship.

From what has heretofore been said, we think it sufficiently appears that in actions which are ex delicto the question whether the tort is maritime or nonmaritime does not depend upon whether or not the person who brings the action was, when he was injured, working under a maritime contract. It depends solely upon the locality of the person injured at the time the wrong was committed. If the wrong takes place on land it is nonmaritime, and if it takes place on navigable water it is maritime.

It may be said, however, that, if the plaintiff at the time of his injury was employed under a maritime contract, a contract to render a stevedoring service, it is immaterial that the tort was nonmaritime, and equally immaterial that the action is not a contract action. A decision of the New York Court of Appeals lends support to such a contention. That able and distinguished court has held that the Workmen's Compensation Law of that state does not apply under somewhat similar circumstances to those existing in the case now before the court. In the New York case the tort was nonmaritime, as the injury occurred on the dock, and the contract under which the person injured was rendering service at the time of his injury was held by that court to be maritime in its nature, and on that account the New York statute was held by the state court inapplicable. Whether in law Keator was acting as a stevedore, or was merely the agent of the consignee in receiving the stone after it left the ship, is a question upon which we need not express any opinion. The important fact now is that the New York court regarded it as a maritime service rendered under a maritime contract. Matter of Keator v. Rock Plaster Co., 182 App. Div. 153, 164 N. Y. Supp. 645; Id., 224 N. Y. 540, 120 N. E. 56 (1918). In that case Keator was in the employ of the defendant, a company engaged in the manufacture of plaster of paris and in stone crushing and grinding. A boat lying alongside a pier in the East River,

and belonging to third persons, was unloading stone at the plant on the dock. Keator had charge of the unloading of the rock, and while on the dock and engaged in the performance of his duties in unloading the vessel he was struck by a load of rock being hoisted from the vessel to the dock, and killed. An award under the New York Law as stated in Matter of Doey v. Howland Co., 224 N. Y. 30, 36, 120 N. E. 53, is not made on the theory that a tort has been committed, but upon the theory that the statute giving the commission power to make an award is read into and becomes a part of the contract, and that the admiralty courts had exclusive jurisdiction over the contract. In the Keator Case an application to the Supreme Court for a writ of certiorari was denied, for reasons not stated, in State Industrial Commission of State of New York v. Rock Plaster Mfg. Co., 248 U. S. 574, 39 Sup. Ct. 12, 63 L. Ed. 428.

But in Western Fuel Co. v. Garcia, supra, which we have seen was decided by the Supreme Court of the United States in December, 1921, the person was rendering service at the time he was killed under a maritime contract as he was employed as a stevedore, and the accident happened in the hold of the vessel so that the tort was also maritime, but nevertheless the California Workmen's Act was held applicable, as we have already pointed out. The court reached its conclusion notwithstanding the fact that neither the general maritime law nor the common law recognized the right to recover damages for the death of a human being caused by negligence. If the local statute gave a cause of action for wrongfully causing death under such circumstances, and when the person was employed under a maritime contract, we do not see what there is in the New Jersey Workmen's Compensation Act which works material prejudice to the characteristic features of the general maritime law, or which interferes with the proper harmony and uniformity of that law in its international and interstate relations. We do not know upon what ground the writ of certiorari was denied in the Keator Case. It is conceivable, we suppose, that it may have been denied for the reason that that court did not feel it to be within its jurisdiction to determine whether the state court held its own state statutes inapplicable to the facts of the particular case, although it might be erroneous provided it did not deprive either party of a right to which he was entitled under the Constitution of the United States or under any act of Congress. It by no means follows that in that case the writ was refused because there was no error.

In the Rhode Case, supra, in which the Supreme Court held the Oregon Workmen's Compensation Law applicable, the case involved a maritime tort, and the local statute gave both to employers and workmen an option to accept the statute or to reject it. In that respect it is similar to the New Jersey statute. Workmen under each one of those acts who elect to come under the provisions of the statute are entitled to receive certain specified payments in the event of injury. The Oregon act provides that—

"The right to receive such sums shall be in lieu of all claims against his employer on account of such injury or death, except as hereinafter specifically provided."

And the New Jersey Workmen's Compensation Act provides the only means by which an injured employé can recover compensation from his employer for injuries received in the course of, and arising out of, his employment, and it abrogates the common-law liability of the master for such injuries, in the cases to which it is applicable. Lesko v. Liondale Bleach, etc., Works, 93 N. J. Law, 4, 107 Atl. 275. Under the statute the parties are presumed to have agreed to be bound by the act, unless there is an express statement in writing to the contrary or written notice given in accordance with the terms of the act that its provisions were not intended to apply. In the instant case it does not appear from anything in the record that any such express written agreement not to accept the act was ever made, or that such notice was ever given. In the instant case, as in the Rhode Case, "the injury was suffered," to quote the language of the Supreme Court in the Rhode Case, "within a state whose positive enactment prescribed an exclusive remedy therefor. And as both parties had accepted and proceeded under the statute  *  *  *  it cannot be said that they consciously contracted with each other in the contemplation of the general system of maritime law." And we do not see that in the one case any more than in the other the local rule "would necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations."

[11] This brings us to the consideration of a matter suggested in an earlier portion of this opinion and which was reserved for subsequent examination. We refer to the question whether a tort plainly nonmaritime because its locality was not upon navigable waters is to be regarded as maritime, and so brought within the exclusive jurisdiction of the admiralty, if it appears that the person who suffers the wrong happens at the time of his injury to be rendering service under a maritime contract. We think no such proposition has been laid down at any time expressly or impliedly by the Supreme Court of the United States or by any of the federal courts. It does not seem to us that such a doctrine has any support upon which to rest unless it be the recent, and as it seems to us, mistaken, decision of the Court of Appeals of New York in Matter of Keator, supra.

If the question is put in another form, it may be stated in this way: Does the fact that the person injured wrongfully and while on land is at the time of his injury working under a maritime contract constitute a reason why the admiralty jurisdiction attaches in an action ex delicto, upon the theory that that jurisdiction attaches to a maritime contract, and that, although the action is not brought upon the contract, still, as it is indirectly involved, the question of jurisdiction is to be determined, not by the principles applicable to actions ex delicto, but to those ex contractu? To state the question in this way it seems to us is to make any refutation of it a work of supererogation.

[12] If we are right in the view above expressed the case comes down to this: That the plaintiff being injured on the land the wrong was nonmaritime, and as such was not within the admiralty jurisdiction, and was not brought within it by the fact that he happened to

be working at the time under a maritime contract. And as the wrong done was not within the admiralty jurisdiction, and was within the jurisdiction of the courts of the state within which the injury was inflicted, the Workmen's Compensation Act of New Jersey (P. L. 1911, p. 136) applies if, on the pleadings and proof, it appears that said act furnishes plaintiff his exclusive remedy.

Under section II of the act "when employer and employé shall by agreement, either expressed or implied," accept the provisions of said section, then compensation shall be made by the employer without regard to his own negligence. Under paragraph 9 of section II it is provided:

"Every contract of hiring * * * shall be presumed to have been made with reference to the provisions of section II of this act, and unless there be as a part of such contract an express statement in writing, prior to any accident, either in the contract itself or by written notice from either party to the other, that the provisions of section II of this act are not intended to apply, then it shall be presumed that the parties have accepted the provisions of section II of this act and have agreed to be bound thereby. * * *"

In Gregutis v. Waclark Wire Works, 86 N. J. Law, 610, 92 Atl. 354, the New Jersey Court of Errors and Appeals held that before the employé may maintain a common-law action his complaint must affirmatively show, and he must also prove at the trial, that the case does not come within the Workmen's Compensation Act. In the absence of such allegation and proof, according to the holdings of the New Jersey courts, the complaint would be dismissed. See, also, McNutt v. Adams Express Co., 94 N. J. Law, 487, 111 Atl. 13.

The same theory of pleading and proof has been adopted and announced by the New York courts in respect of the New York Workmen's Compensation Law. Shinnick v. Clover Farms Co., 169 App. Div. 236, 154 N. Y. Supp. 423; Nulle v. Hardman, Peck & Co., 185 App. Div. 351, 173 N. Y. Supp. 236; Barone v. Brambach Co., 101 Misc. Rep. 669, 167 N. Y. Supp. 933; Culhane v. Economical Garage, Inc., 195 App. Div. 108, 186 N. Y. Supp. 454; Basso v. Clark, 189 App. Div. 944, 178 N. Y. Supp. 877, reversing 108 Misc. Rep. 78, 177 N. Y. Supp. 484. In both New Jersey and New York the point is that the courts assume that the statute applies, unless a plaintiff employé affirmatively alleges and proves that it does not.

In the case at bar, although counsel for defendant safeguarded the rights of his client by appropriate motion, exception, and assignment of error, yet he and counsel for plaintiff and the court were of opinion that the act did not apply, and beyond a mere statement to that effect there was no discussion of the question. At the time neither the Garcia nor the Rhode Cases, supra, had been decided, and we fully appreciate that the view was then widely entertained that the Workmen's Compensation Act did not apply in a case such as that at bar.

In the circumstances, justice would require that leave be granted to plaintiff to amend his complaint, if so advised, to allege facts, if any, showing that the New Jersey Workmen's Compensation Law did not apply to his case. While this opportunity will be afforded, it may not be necessary to avail of it. We have felt concerned as to the danger of plaintiff's loss of all rights, and have therefore inquired as to his

status under the New Jersey act. We learn that the defendant is covered by a compensation insurance policy, and that this policy is still in force and effect, and that, if the plaintiff files with the Workmen's Compensation Bureau of New Jersey Compensation a claim on or before April 5, 1922, the insurer will pay any final award properly made.

The judgment is reversed, without costs, with instructions to the District Court to allow plaintiff to amend in the respects hereinbefore noted, if so advised. The mandate will issue forthwith, to enable the plaintiff to move promptly to file his claim with the Workmen's Compensation Bureau of New Jersey.

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

