Elsie C. WIPER, Executrix, Plaintiff-Appellant,

v.

GREAT LAKES ENGINEERING WORKS, Defendant-Appellee.

No. 15467.

United States Court of Appeals Sixth Circuit.

Jan. 29, 1965.

Harvey Goldstein, New York City (Victor G. Hanson, Detroit, Mich., Goldstein & Sterenfeld, New York City, on the brief), for appellant.

Leroy G. Vandeveer, Detroit, Mich. (Vandeveer, Haggerty, Doelle, Garzia, Tonkin & Kerr, Detroit, Mich., on the brief), for appellee.

Before MILLER and EDWARDS, Circuit Judges, BROOKS, District Judge.

BROOKS, District Judge.

This appeal is from a summary judgment entered in this the second action brought by the Plaintiff-Appellant Elsie C. Wiper, Executrix of the estate of Joseph W. Wiper, deceased, to recover damages for the death of her husband who was an engineer aboard the vessel S. S. HYDRO. The first action was brought pursuant to the Jones Act, 46 U.S.C. § 688, and resulted in a jury verdict for Erie Sand Steamship Co., the owner of the vessel. The judgment was affirmed on appeal. Wiper v. Erie Sand Steamship Co., 293 F.2d 491 (2nd Cir. 1961). The present action is based on diversity of citizenship and amount in controversy and is against the Great Lakes Engineering Works, Defendant-Appellee (hereafter Great Lakes), the owner of the dock at which the HYDRO was tied at the time the decedent disappeared.

It was stipulated that the testimony in the prior case would be considered on the motion for summary judgment and the few known circumstances surrounding the death of the decedent are not in dispute. He was a member of the crew of the HYDRO, a sandsucker operating in the Great Lakes that put in for repairs at the yard of Great Lakes. During the afternoon of September 15, between 4:00 and 5:00 o'clock, the Marine Superintendent of Erie Sand Steamship Company talked with Wiper and, noticing that he had been drinking, suggested he get some sleep. Later that evening, about 8 o'clock, a seaman awakened Wiper to tell him that the Great Lakes employees were looking for an oil seal. Wiper said he would go ashore to the machine shop and check on the missing part. He dressed in street clothes and as he was leaving he met the captain of the HYDRO who, smelling alcohol on Wiper's breath, asked him to go back to bed. Wiper disregarded this request, went down the ladder and was next seen on the roadway which led to the machine shop and also to the town of River Rouge, which was about one mile away. A crewman who saw Wiper on the roadway

was the last witness who saw Wiper alive. He said Wiper "could walk O.K." The following morning the HYDRO sailed without Wiper and three days later his body was recovered in the slip. An autopsy was performed and the cause of death was found to be asphyxia by drowning. The autopsy also disclosed Wiper's blood alcohol content to be .35%. An expert witness testified that a person with a .35% of blood alcohol content would be "somewhere between a very sleepy and stuporous state and complete coma."

The complaint alleges that Great Lakes failed to provide a safe docking area for the HYDRO and as result of such negligence the decedent was "caused to fall from such dock into the water, thereby resulting in his death by drowning." Negligence in the maintenance of the dock was not denied by Great Lakes for the purpose of consideration of its motion for summary judgment.

The plaintiff first contends that the motion was erroneously granted because of the application of the law of Michigan rather than maritime law in determining as a matter of law that because of a complete lack of evidence no factual issue of proximate cause existed between the negligent maintenance of the dock and the death of the decedent. It was on this basis alone that the motion for summary judgment was granted, the District Court holding that the plaintiff must establish a connection between any negligence of Great Lakes and the death of her husband and that existence of a causal connection may not be left to conjecture, quoting from Kaminski v. Great Trunk Western R.R., 347 Mich. 417, 422, 79 N.W.2d 899, 901–902, where the Michigan Supreme Court adopted the following standard for proof of causal connection:

"As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only. On the other hand, if there is evidence which points to any one theory of causation, indicating a logical sequence of cause and effect, then there is a juridicial basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence."

■ Since the record is completely devoid of any evidence as to how Wiper met his death and since it could have resulted from many causes equally as probable as the one relied upon by plaintiff, its causation is pure conjecture and the motion for summary judgment was properly sustained under Michigan law. General Motors Corporation v. Wolverine Insurance Co., 255 F.2d 8 (6th Cir. 1958); Sheptur v. Procter & Gamble Distributing Co., 261 F.2d 221 (6th Cir. 1958), cert. denied, 359 U.S. 1003, 79 S.Ct. 1136, 3 L.Ed.2d 1031; Kaminski v. Grand Trunk Western R.R. Co., supra; Poledna v. Bendix Aviation Corporation, 360 Mich. 219, 103 N.W.2d 789; Bryant v. Athans, 362 Mich. 17, 106 N.W.2d 389; Walsh v. Grand Trunk R.R. Co., 363 Mich. 522, 110 N.W.2d 799.

■ The plaintiff, however, asserts it was error to apply the Michigan standard of causal connection to the facts of this case. She argues it was a maritime tort that caused the death of her husband and since the Michigan Wrongful Death Act, Comp.Laws 1948, c. 691, § 691.581, Sect. 1 of the Judicature Act, permits a cause of action under the same principles which would have been available to decedent had he only been injured, the proper standard of causal connection is that followed in cases involving maritime torts. And it does appear that if the maritime standard of causation had been applied here the District Court might not have directed a verdict since even when conjectural such issue is generally left to the jury. See Lavender

v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946). Myers v. Reading Co., 331 U.S. 477, 67 S.Ct. 1334, 91 L.Ed. 1615 (1947). Schulz v. Pennsylvania R. R. Co., 350 U.S. 523, 76 S.Ct. 608, 100 L.Ed. 665 (1956); Stone v. New York, C. & St. L. R.R. Co., 344 U.S. 407, 73 S.Ct. 358, 97 L.Ed. 441 (1953); and Rogers v. Missouri Pacific R.R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957), and see also Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960), applying the same standard to a claim of negligence under the Jones Act and to a claim of unseaworthiness under the general maritime law.

▮ Plaintiff's contention, however, that maritime law is applicable must be rejected for it is well-settled that absent a maritime status between the parties the traditional test of locality of the tort governs the question of whether maritime or state law is applicable. Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); London Guaranty & Accident Co. v. Industrial Accident Commission of California, 279 U.S. 109, 49 S.Ct. 296, 73 L.Ed. 632 (1929); State Industrial Commission of New York v. Nordenholt Corp., 259 U.S. 263, 42 S.Ct. 473, 66 L.Ed. 933 (1922); Martin v. West, 222 U.S. 191, 32 S.Ct. 42, 56 L.Ed. 159 (1911); Hughes, Admiralty (2nd Ed.) Sec. 96. Thus where the tort occurred in navigable waters the maritime law is applicable, Atlantic Transport Co. of West Virginia v. Imbruvek, 234 U.S. 52, 61, 34 S.Ct. 733, 58 L.Ed. 1208 (1914); In re Garnett, 141 U.S. 1, 11 S.Ct. 840, 35 L.Ed. 631 (1890); New England Mutual Marine Ins. Co. v. Dunham, 11 Wall. 1, 20 L.Ed. 90 (1870); The Eagle, 8 Wall. 15, 19 L.Ed. 365 (1868), but where it occurred on land the state law is applicable. Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932); O'Donnell v. Great Lakes Dredge & Dock Co., 318 U.S. 36, 41, 63 S.Ct. 488, 87 L.Ed. 596 (1943). Under the allegations of the complaint, defendant's negligently kept dock resulted in decedent's death by drowning in navigable waters, and therefore plaintiff contends that the tort should be deemed to have occurred in navigable water. However, docks and wharves are considered as extensions of land, American Export Lines, Inc. v. Revel, 266 F.2d 82 (4th Cir. 1959); Netherlands American Steam Nav. Co. v. Gallagher, 282 F. 171 (2nd Cir. 1922); The Plymouth, 3 Wall. 20, 70 U.S. 20, 18 L.Ed. 125 (1865); Hughes, Admiralty (2d Ed.) Sec. 198; 2 Am. Jur. 741, 767–768, ADMIRALTY Sec. 84, and therefore the negligently maintained dock which presumably caused the decedent to fall was land, and the decedent was on land at the time he was caused to fall. Thus, the tort was complete before decedent ever touched the water and this being true, the subsequent drowning is significant not to determine the maritime or non-maritime nature of this action but only as it relates to damages, Cleveland Terminal and Valley R.R. Co. v. Cleveland Steamship Co., 208 U.S. 316, 28 S.Ct. 414, 52 L.Ed. 508 (1908); The Plymouth, 3 Wall. 20, 70 U.S. 20 (1865).

The very recent opinion in Interlake Steamship Co. v. Nielsen, 338 F.2d 879 (6th Cir. 1964), where a shipkeeper in the course of his employment drove his car off the dock where his ship was berthed and was killed by his impact on the ice in navigable waters is distinguishable from the present case. There the coverage of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 903(a), was held to extend to a claim for injury or death when the situs of the injury or death was in navigable waters regardless of whether the cause had a land-based origin. In the present case it is the locality of the tort that governs the question of whether maritime or state law is applicable rather than the locality where the injuries or death occurred which, as held by Interlake, determines coverage under the

Longshoremen's and Harbor Workers' Compensation Act. For these reasons then, there is no merit to plaintiff's claim that the tort here in question occurred in navigable waters.

Finally the plaintiff seeks to invoke maritime jurisdiction under the Jones Act by arguing that Wiper, although not empowered by Great Lakes, was under its direction and was a borrowed servant in the repairing of the HYDRO as shown by his leaving the ship to procure the oil seal. This issue of "borrowed servant" was not raised in the District Court and should not be considered here. Helvering, Commissioner of Internal Revenue v. Wood, 309 U.S. 344, 348–349, 60 S.Ct. 551, 84 L.Ed. 796 (1940); Safeway Stores, Inc. v. Oklahoma Retail Grocers Association, Inc., 360 U.S. 334, 342, 79 S.Ct. 1196, 3 L.Ed. 2d 1280 footnote 7 (1959); Reliford v. Eastern Coal Corp., 260 F.2d 447, 457 (6th Cir. 1958), cert. denied, 359 U.S. 958, 79 S.Ct. 797, 3 L.Ed.2d 765 (1959); City of Erlanger v. Berkemeyer, 207 F.2d 832, 839, 38 A.L.R.2d 918 (6th Cir. 1953); Allstate Insurance Co. v. Springer, 269 F.2d 805, 811 (6th Cir. 1959). However, even if considered, the argument must be rejected as being without merit. If Wiper could be considered a borrowed servant of Great Lakes, a land-based operation for repairing vessels, then decedent's executrix's only remedy to recover damages would be resort to state law, as the tort that caused his death occurred on land, and Wiper as a borrowed servant of Great Lakes could not be acting in the course of his employment as a seaman, and only a seaman acting within the course of his employment is within the protection of the Jones Act. Swanson v. Marra Bros., 328 U.S. 1, 7, 66 S.Ct. 869, 90 L.Ed. 1045 (1946); Frankel v. Bethlehem-Fairfield Shipyard, D.C., 46 F.Supp. 242, 249, affirmed 132 F.2d 634 (4th Cir. 1942), cert. denied, 319 U.S. 746, 63 S.Ct. 1030, 87 L.Ed. 1702 (1942).

The Judgment of the District Court is affirmed.