448 F.2d 151
 EXECUTIVE JET AVIATION, INC., and Executive Jet Sales, Inc.,
Plaintiffs-Appellants,
v.
CITY OF CLEVELAND, OHIO and Phillip A. Schwenz, Defendants
and Third-Party Plaintiffs-Appellees, Howard E.
Dicken, Defendant-Appellee,
v.
UNITED STATES of America, Third-Party Defendant-Appellee.
 No. 20706.
 United States Court of Appeals,
Sixth Circuit.
 Aug. 24, 1971.
 
 Phillip D. Bostwick, Washington, D. C., Shaw, Pittman, Potts, Trowbridge & Madden, Washington, D. C., Ron Tonidandel, Spieth, Bell, McCurdy & Newell, Cleveland, Ohio, on the brief, for appellants.
 Edward D. Crocker, Cleveland, Ohio, Arter & Hadden, Cleveland, Ohio, on the brief, for City of Cleveland and Phillip A. Schwenz.
 James C. Hair, Jr., Department of Justice, Washington, D. C., William D. Ruckelshaus, Asst. Atty. Gen., Robert V. Zener, Atty., Department of Justice, Washington, D. C., Robert B. Krupansky, U. S. Atty., Cleveland, Ohio, on the brief, for Howard E. Dicken.
 Before PHILLIPS, Chief Judge, and EDWARDS and McCREE, Circuit Judges.
 PHILLIPS, Chief Judge.
 
 
 1
 This appeal grows out of a one-plane aircraft accident. The suit was filed in admiralty. The sole issue on appeal is whether the action is within the admiralty jurisdiction of the District Court. We hold that the alleged tort occurred on land, even though the plane fell into navigable waters shortly after take off from the airport, and that no right of action is cognizable in admiralty. We affirm the judgment of District Judge Girard E. Kalbfleisch, who dismissed the complaint.
 
 
 2
 The facts, as set forth in the complaint and supplemented by interrogatories and depositions, are as follows:
 
 
 3
 On July 28, 1968, a Falcon Mystere jet aircraft, owned by appellant Executive Jet Sales, Inc., and operated by appellant Executive Jet Aviation, Inc., struck hundreds of sea gulls seconds after take off from Burke Lakefront Airport in Cleveland, Ohio. The sea gulls were flushed from the airport runway by the aircraft as it became airborne and collided with the plane over the airport runway. The plane immediately suffered a substantial loss of power and began to descend while still over land. It struck the airport perimeter fence, then hit a pick-up truck, and finally settled a short distance off shore into the navigable waters of Lake Erie.
 
 
 4
 No persons were killed or injured, but the aircraft was alleged to be a total loss as a result of the soaking in the waters of Lake Erie.
 
 
 5
 The appellees are the City of Cleveland, owner of the airport; Phillip A. Schwenz, the airport manager on the date in question; and Howard E. Dickens the air traffic controller on duty at the time in question.
 
 
 6
 The complaint alleged that the loss of the aircraft was a result of the appellees' negligence in clearing the aircraft for take off, failing to warn appellants of the huge flock of sea gulls on the runway, and failing to remove the sea gulls from the runway.
 
 
 7
 The Supreme Court said in The Admiral Peoples, 295 U.S. 649, 651, 55 S.Ct. 885, 886, 79 L.Ed. 1633.
 
 
 8
 "This is one of the border cases involving the close distinctions which from time to time are necessary in applying the principles governing the admiralty jurisdiction. That jurisdiction in cases of tort depends upon the locality of the injury. It does not extend to injuries caused * * * to persons or property on the land. Where the cause of action arises upon the land, the state law is applicable. The Plymouth, 3 Wall. 20, 33 [18 L.Ed. 125]; Johnson v. Chicago & Pacific Elevator Co., 119 U.S. 388, 397 [7 S.Ct. 254, 30 L.Ed. 447]; Cleveland Terminal & V. R. Co. v. Cleveland Steamship Co., 208 U.S. 316, 319 [28 S.Ct. 414, 52 L.Ed. 508]; Atlantic Transport Co. [of West Virginia] v. Imbrovek, 234 U.S. 52, 59 [34 S.Ct. 733, 58 L.Ed. 1208]; State Industrial Comm'n [of State of New York] v. Nordenholt Corp., 259 U.S. 263, 272 [42 S.Ct. 473, 66 L.Ed. 933]; Smith & Son v. Taylor, 276 U.S. 179, 181 [48 S.Ct. 228, 72 L.Ed. 520]; compare Vancouver S. S. Co. v. Rice, 288 U.S. 445, 448 [53 S.Ct. 420, 77 L.Ed. 885]."
 
 
 9
 The dispositive issue is whether the cause of action for the alleged tort arose on land or on navigable water.
 
 
 10
 The test to determine whether a cause of action in tort arose on land or on navigable water was applied by decisions of the Supreme Court in The Admiral Peoples, supra, and Minnie v. Port Huron Terminal Co., 295 U.S. 647, 55 S.Ct. 884, 79 L.Ed. 1631. We consider these opinions, written by Chief Justice Hughes for a unanimous Court, to control the present case.
 
 
 11
 In The Admiral Peoples, supra, a lady passenger fell from the ship's gangplank onto the wharf where she was injured.[1] The passenger alleged that the fall was caused by negligent placement or construction of the ship's gangplank. The Supreme Court said:
 
 
 12
 "By reason of that neglect, as the libel alleges, she fell from the plank and was violently thrown forward upon the dock. Neither the short distance that she fell nor the fact that she fell on the dock and not in the water, alters the nature of the cause of action which arose from the breach of duty owing to her while she was still on the ship and using its facility for disembarking.
 
 
 13
 "This view is supported by the weight of authority in the federal courts. In The Strabo, [D.C.] 90 Fed. 110, 98 Fed. 998, libelant, who was working on a vessel lying at a dock, attempted to leave the vessel by means of a ladder which, by reason of the master's negligence, was not secured properly to the ship's rail and in consequence the ladder fell and the libelant was thrown to the dock and injured. The District Court, sustaining the admiralty jurisdiction, asked these pertinent questions (90 Fed. p. 113): 'If a passenger, standing at the gangway, for the purpose of alighting, were disturbed by some negligent act of the master, would the jurisdiction of this court depend upon the fact whether he fell on the dock, and remained there, or whether he was precipitated upon the dock in the first instance, or finally landed there after first falling on some part of the ship? If a seaman, by the master's neglect, should fall overboard, would this court entertain jurisdiction if the seaman fell in the water, and decline jurisdiction if he fell on the dock or other land? The inception of a cause of action is not usually defined by such a rule.' The Circuit Court of Appeals of the Second Circuit, affirming the decision of the District Court (98 Fed. p. 1000), * * * said: 'The cause of action originated and the injury had commenced on the ship, the consummation somewhere being inevitable. It is not of vital importance to the admiralty jurisdiction whether the injury culminated on the stringpiece of the wharf or in the water.' See, also, The Atna, [D.C.] 297 F. 673, 675, 676; The Brand, [D.C.] 29 F.2d 792." Id., 295 U.S. at 652-653, 55 S.Ct. at 886.
 
 
 14
 The Court held in The Admiral Peoples that the passenger's cause of action arose on navigable water.
 
 
 15
 The Supreme Court reached the same conclusion in Minnie v. Port Huron Co., supra, 295 U.S. 647-649, 55 S.Ct. at 884.
 
 
 16
 "Petitioner, a longshoreman, was injured at Port Huron while unloading a vessel lying in navigable water. He was about his work on the deck of the vessel when he was struck by a swinging hoist, lifting cargo from a hatch, and was precipitated upon the wharf. He sought compensation under the compensation act of the State of Michigan. His employer, the Port Huron Terminal Company, contended that the accident occurred upon navigable water and that the state law did not apply. The defense was overruled by the state commission in the view that the injury must have been occasioned by petitioner's fall upon the wharf and hence that the claim was within the state statute, although the injury would not have been received except for the force applied to his person while on the vessel. The Supreme Court of the State vacated the commission's award, holding that the federal law controlled. [Minnie v. Port Huron Terminal Co.] 269 Mich. 295; 257 N.W. 831. Because of an asserted conflict with decisions of this Court, a writ of certiorari was granted.
 
 
 17
 "* * * In the instant case, the injury was due to the blow which petitioner received from the swinging crane. It was that blow received on the vessel in navigable water which gave rise to the cause of action, and the maritime character of that cause of action is not altered by the fact that the petitioner was thrown from the vessel to the land.
 
 
 18
 "We had the converse case before us in Smith & Son v. Taylor, 276 U.S. 179 [48 S.Ct. 228, 72 L.Ed. 520]. There a longshoreman, employed in the unloading of a vessel at a dock, was standing upon a stage that rested solely upon the wharf and projected a few feet over the water to or near the vessel. He was struck by a sling loaded with cargo, which was being lowered over the vessel's side and was knocked into the water, where sometime later he was found dead. It was urged that the suit was solely for the death which occurred in the water and hence that the case was exclusively within the admiralty jurisdiction. We held the argument to be untenable. We said: 'The blow by the sling was what gave rise to the cause of action. It was given and took effect while deceased was upon the land. It was the sole, immediate and proximate cause of his death. The G. R. Booth, 171 U.S. 450, 460 [19 S.Ct. 9, 43 L.Ed. 234]. The substance and consummation of the occurrence which gave rise to the cause of action took place on land.' Id., [276 U.S.] p. 182 [48 S.Ct. 228, 229]."
 
 
 19
 In the present case the aircraft was precipitated into Lake Erie by the allegedly negligent acts of the appellees on land. The aircraft collided with the sea gulls and began to fall while over land. The fence and the truck were struck on land. Under the authorities cited above it is of no consequence that the major amount of damage occurred after the aircraft sank in navigable water. The alleged negligence of appellees "was given and took effect" on land. Smith & Son v. Taylor, 276 U.S. 179, 182, 48 S.Ct. 228, 72 L.Ed. 520. The cause of action arose on land and not on navigable water.
 
 
 20
 Appellants rely heavily on Weinstein v. Eastern Air Lines, Inc., 316 F.2d 758 (3rd Cir.). As we read that decision, the test for admiralty jurisdiction over torts stated at 316 F.2d at 761 produces the same result we have reached when applied to the facts of the present case. The Court said:
 
 
 21
 "The critical factor in determining whether a tort claim comes within the broad statutory grant of admiralty jurisdiction is the situs of the tort; i.e., the place where it happened." Id. at 761.
 
 
 22
 Since we agree with the District Court that the alleged tort in this case occurred on land before the aircraft reached Lake Erie, and since admiralty jurisdiction does not extend to torts committed on land, it is not necessary to consider the question of maritime relationship or nexus discussed by this court in Gowdy v. United States, 412 F.2d 525, 527-529 (6th Cir.), cert. denied, 396 U.S. 960, 90 S.Ct. 437, 24 L.Ed.2d 425, and Chapman v. City of Grosse Pointe Farms, 385 F.2d 962, 966 (6th Cir.). See Nacirema Operating Co. v. Johnson, 396 U.S. 212, 215, n. 7, 90 S.Ct. 347, 24 L.Ed.2d 371; Atlantic Transport Co. of West Virginia v. Imbrovek, 234 U.S. 52, 58-60, 34 S.Ct. 733, 58 L.Ed. 1208; Wiper v. Great Lakes Engineering Works, 340 F.2d 727, 729-731 (6th Cir.).
 
 
 23
 Affirmed.
 
 
 24
 McCREE, Circuit Judge (concurring in the opinion of Judge PHILLIPS).
 
 
 25
 I wish to add a few words of concurrence to Chief Judge Phillips' opinion. Our court adopted the "locality-plus" test of maritime jurisdiction in Chapman v. City of Grosse Pointe Farms, 385 F.2d 962 (6th Cir. 1967), and Wiper v. Great Lakes Engineering Works, 340 F.2d 727 (6th Cir. 1965), cert. denied, 382 U.S. 812, 86 S.Ct. 28, 15 L.Ed.2d 60 (1965), but I agree with Judge Phillips that the difference between that test and the "locality-alone" test is not involved in the decision of this case. The crucial question here-on which I read Judge Phillips and Judge Edwards to take opposite views-is where did the tort occur?
 
 
 26
 That question I believe is foreclosed by the cases cited by Judge Phillips, at pp. 153-154, and Judge Edwards, at pp. 155-156, and by Wiper. The rule, as I understand it, is that the situs of the tort is where the negligence becomes operative, not where the damages, or the major portion of them, are sustained. Applied here, this rule requires affirmance of Judge Kalbfleisch's careful opinion. The plane hit the gulls over land; and there, under our rule, is where the tort occurred. Maritime jurisdiction is absent, and it becomes unnecessary to decide whether there is (or must be) a "plus," because there is no maritime "locality."
 
 
 27
 I do not read the Third Circuit's opinion in Weinstein v. Eastern Air Lines, Inc., 316 F.2d 758 (3d Cir. 1963), as necessarily contradicting this view. Neither in that court's opinion, nor in the opinion of the District Court whose judgment it was reviewing, 203 F.Supp. 430 (E.D. Pa.1962), is there a finding where the impact of the tortious conduct was first evidenced-over land or over sea. However, it is clear that the plane was airborne, and, at the posture of review required by the motion to dismiss, the inference most favorable to plaintiff would be that the negligence became operative over water. Nevertheless, that court held that the situs of the tort was where the injury was sustained, 316 F.2d at 765, and on the facts presented, it was clear that that was within navigable waters. We have a different rule, and I believe we could not reach that result without overruling Wiper, not to mention the Supreme Court cases cited by Judge Phillips.
 
 
 28
 In Weinstein, the Third Circuit stated in dictum that airplanes, at least over navigable waters, were to be considered prima facie maritime. 316 F.2d at 763. I agree, as a matter of policy, with much of what Judge Edwards has written in support of the view that "air ships * * are within the maritime jurisdiction when they crash on navigable waters." At p. 157. But I have not seen cited a statute indicating that Congress has so extended maritime jurisdiction. Arguably it might be able to do so, and should, but it is the job of Congress, and not of the courts, to broaden maritime jurisdiction to cover the facts of this case. Under established law, we are faced only with a narrower question, which can be answered fairly readily unless we wish to depart from the precedents which normally bind us.
 
 
 29
 EDWARDS, Circuit Judge (dissenting).
 
 
 30
 This case presents a single important question:
 
 
 31
 Do the federal courts have maritime jurisdiction over airplane crashes in navigable waters where the cause of the crash is alleged to be tortious conduct which occurred on land?
 
 
 32
 The Third Circuit has previously answered this question affirmatively in the context of death cases arising out of the crash of a passenger aircraft into Boston Harbor shortly after takeoff where the causes of the crash were alleged, as here, to have been land-based. Weinstein v. Eastern Air Lines, Inc., 316 F. 2d 758 (3d Cir.), cert. denied, 375 U.S. 940, 84 S.Ct. 343, 11 L.Ed.2d 271 (1963).[1]
 
 
 33
 In our instant case, the facts properly before the court on motion for summary judgment showed that an aircraft taking off from a lakefront airport in Cleveland, Ohio, struck a flight of sea gulls, ingesting sufficient of them into its jet system to cause loss of power while it was still over the runway and that the plane subsequently grazed a truck and the airport perimeter fence before being destroyed by crashing into and sinking in the navigable waters of Lake Erie two-fifths of a mile from shore. Appellants allege that the crash was caused by failure of defendants to warn the pilot of the aircraft of the presence of "a sea of birds" on the runway, which fact was known to defendants or their agents but not to the pilot because of the topography of the runway.
 
 
 34
 The crew of the aircraft survived and the pilots by deposition provided the District Court with this vivid and undisputed summary of the crash.
 
 
 35
 "After clearance to take-off was received the pilot in the left seat executed the take-off and rotated at approximately 125 Kts. The pilot in the right seat made a power check, voiced 30 Kts., 100 Kts., V1 and rotate. The pilot in the left seat could not distinguish the bird line prior to rotation and in his estimation could not abort the take-off. On rotating a sea of birds on the runway became visible. Approaching the birds at approximately 75 feet caused them to flush and fly into the aircraft * * *. Bird impact substantially reduced the air speed an estimated 15 or 20 Kts. The pilot in the left seat raised the gear handle, the pilot in the right seat maneuvered the throttles in an effort to obtain partial power. There was almost immediate total loss of power. The engine temperature indicated above 850 degrees on both engines and the RPM dropped rapidly below 70%. The aircraft flew in a semi-stalled attitude stall horn blowing until contacting the water. The aircraft struck the top of a pick-up truck and a portion of the airport perimeter fence. The aircraft contacted the water in a flat attitude and on a second impact water entered the cabin almost immediately. Only a few seconds passed between bird impact and water contact and it is estimated that the aircraft did not attain more than 75 to 100 feet in altitude."
 
 
 36
 In a well-reasoned opinion which sought earnestly to follow the logic of this court's previous opinions dealing with maritime jurisdiction (in cases where the facts differed greatly from the present ones), the District Judge granted defendant-appellees' motions for summary judgment. Relying primarily upon this Court's opinions in Chapman v. City of Grosse Pointe Farms, 385 F.2d 962 (6th Cir. 1967), and Wiper v. Great Lakes Engineering Works, 340 F.2d 727 (6th Cir.), cert. denied, 382 U.S. 812, 86 S.Ct. 28, 15 L.Ed.2d 60 (1965), the District Judge reasoned:
 
 
 37
 "[I]n this case the airport and the runway were upon land and the alleged negligence which caused the plane to crash occurred upon land. Further, the plane became disabled over land and came into contact with a fence and a truck before ever crossing the shoreline. It is this Court's opinion that the eventual crash of the plane into Lake Erie, and its destruction by water, are at best fortuitous and are significant 'not to determine the maritime or non-maritime nature of this action but only as it relates to damages.' (Wiper, supra.)
 
 
 38
 "It is the opinion of the Court, therefore, that the tort in this case did not occur upon navigable waters and the action is not cognizable in admiralty. In reaching this conclusion, the Court is well aware of the many decisions holding that a plane crash into navigable waters is within admiralty jurisdiction. However, as the analysis above reveals, drawing from those cases a general rule that all plane crashes into navigable waters are cognizable in admiralty and applying such a rule here would belie the principles which governed locality of the tort before the problems peculiar to air commerce arose. Where the facts are not known, a court might rightly assume that the alleged negligence became operative and effective upon the aircraft over navigable waters; but here the alleged negligence had crippled the plane well before it reached the water. Assuming otherwise would require that the Court ignore the very facts upon which it must rely in testing jurisdiction. Without distinguishing each of the cases involving an airplane crash into navigable waters, it is sufficient to state that the undisputed facts in this case demonstrate that the tort occurred over the land."
 
 
 39
 While I respect the logic and industry with which the District Judge approached his task, I would reach a different result. There are legal and policy questions of great portent for the future which this case requires us to answer. I believe that the facts of this case require us to accept or reject Weinstein, supra, and thus, to decide for this Circuit whether air ships, which are increasingly displacing water-borne ships in maritime commerce, are within the maritime jurisdiction when they crash on navigable waters.
 
 ADMIRALTY JURISDICTION IN THE UNITED STATES
 
 40
 Article III, Sec. 2 of the Constitution of the United States provides:
 
 
 41
 "The judicial Power shall extend * * * to all Cases of admiralty and maritime Jurisdiction; * * *."
 
 
 42
 By statute Congress has vested "original jurisdiction of * * * [a]ny civil case of admiralty or maritime jurisdiction * * *" in the district courts. 28 U.S.C. Sec. 1333 (1964).
 
 
 43
 The United States Supreme Court decided over a hundred years ago that admiralty jurisdiction extended to all navigable waters (as opposed to the original tidewater or high seas concepts). This, of course, included the Great Lakes into one of which (Lake Erie) the plaintiffs' plane crashed. The Propeller, Genesee Chief, et al., 53 U.S. (12 How.) 443, 13 L.Ed. 1058 (1851).
 
 
 44
 CONGRESSIONAL RECOGNITION OF ADMIRALTY JURISDICTION OVER AIRCRAFT
 
 
 45
 In various ways Congress has recognized maritime jurisdiction over aircraft flying over, resting upon, or crashing into navigable waters.
 
 
 46
 a) In 1953 Congress adopted a statute which employed maritime jurisdiction to make a variety of federal criminal laws applicable to aircraft (owned by the United States or by United States citizens) "while such aircraft is in flight over the high seas, or over any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State." 18 U.S.C. Sec. 7(5).
 
 
 47
 b) In 1920 Congress adopted the Death on the High Seas Act providing a remedy in the District Court in admiralty to the personal representatives of persons wrongfully killed on the high seas beyond a marine league from shore.
 
 
 48
 This statute has been unanimously interpreted as applicable to deaths resulting from airplane crashes as well as to deaths on ships on the high seas. Wilson v. Transocean Airlines, 121 F.Supp. 85 (N.D.Cal.1954); Guess v. Read, 290 F.2d 622 (5th Cir. 1961), cert. denied, 368 U.S. 957, 82 S.Ct. 394, 7 L.Ed.2d 388 (1962) (Black, J., dissenting); Noel v. Airponents, Inc., 169 F.Supp. 348 (D.N.J.1958); Stiles v. National Airlines, Inc., 161 F.Supp. 125 (E.D.La. 1958), aff'd, 268 F.2d 400 (5th Cir.), cert. denied, 361 U.S. 885, 80 S.Ct. 157, 4 L.Ed.2d 121 (1959); Noel v. United Aircraft Corp., 219 F.Supp. 556 (D.Del. 1963), aff'd in part, rev'd in part, 342 F.2d 232 (3d Cir. 1965); Bergeron v. Aero Associates, Inc., 213 F.Supp. 936 (E.D.La.1963); Wyman v. Pan American Airways, Inc., 181 Misc. 963, 43 N. Y.S.2d 420 (1943), aff'd, 267 App.Div. 947, 48 N.Y.S.2d 458 (S.Ct.App.Div.), leave denied, 267 App.Div. 983, 49 N.Y.S. 2d 271, cert. denied, 324 U.S. 882, 65 S. Ct. 1029, 89 L.Ed. 1432 (1944); Lacey v. L. W. Wiggins Airways, Inc., 95 F.Supp. 916 (D.Mass.1951)[2]
 
 
 49
 The emphasis of Congress upon the navigable waters test of its jurisdiction is clearly shown in the Admiralty Extension Act of 1948.
 
 
 50
 "Extension of admiralty and maritime jurisdiction; libel in rem or in personam; exclusive remedy; waiting period
 
 
 51
 The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land". 46 U.S.C. Sec. 740 (1964).
 
 SUPREME COURT CASES ON MARITIME JURISDICTION
 
 52
 It is clear that the judicial power of the United States has the task of defining the limits of admiralty jurisdiction within the general language and history of the constitutional grant. The Propeller, Genesee Chief, et al., supra; The Steamer St. Lawrence, 1 Black 522, 66 U.S. 522, 17 L.Ed. 180 (1861); Detroit Trust Co. v. The Thomas Barlum, 293 U.S. 21, 55 S.Ct. 31, 79 L.Ed. 176 (1934). But it is equally clear that defining those limits has been and is anything but simple.
 
 
 53
 In property law, the line where the sea at high tide meets the shore is called "the meander line". The term might well be used to apply to the perimeter of admiralty jurisdiction-at least as applied to tort actions wherein the tort, as here, involves incidents on both land and navigable waters. See generally, The Plymouth, 70 U.S. (3 Wall.) 20, 18 L. Ed. 125 (1865); London Guarantee & Accident Co. Ltd. v. Industrial Accident Comm'n, 279 U.S. 109, 49 S.Ct. 296, 73 L.Ed. 632 (1929); Atlantic Transport Co. v. Imbrovek, 234 U.S. 52, 34 S.Ct. 733, 58 L.Ed. 1208 (1914); Minnie v. Port Huron Co., 295 U.S. 647, 55 S.Ct. 884, 79 L.Ed. 1631 (1935), and T. Smith & Son, Inc. v. Taylor, 276 U.S. 179, 48 S.Ct. 228, 72 L.Ed. 520 (1928). The Supreme Court has not as yet decided any case dealing with admiralty jurisdiction over airplane crashes. But in the series of sea-land cases[3] cited above it has decided cases where, for varying reasons, varying jurisdictional results were reached.
 
 
 54
 In The Plymouth, supra, the Supreme Court held that sea-based negligence of a docked steamer's crew which set fire to and burned down dock-side warehouses did not give rise to admiralty jurisdiction. The case can be and has been argued by appellants for the proposition that "locality alone" controls (referring to locality of the damage) and by appellees that it is the locality where the negligence takes effect that counts.
 
 
 55
 In The Admiral Peoples, 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633 (1935), a ship's passenger fell from a ship's gangplank (alleged to have been negligently placed or constructed) to a dock where she was injured. The Court noted that the breach of duty occurred on shipboard and upheld admiralty jurisdiction.
 
 
 56
 In Minnie v. Port Huron Co., supra, a similar result was reached where a longshoreman on the deck of a vessel was struck by a swinging hoist and knocked onto a dock. The Court there noted that "the injury was due to the blow." 295 U.S. at 648, 48 S.Ct. at 885. It cited and relied upon T. Smith & Son, Inc. v. Taylor, supra, which reached an opposite result where the sling was land-based and knocked the longshoreman into the water. The Court's final rationale concerning T. Smith & Son, Inc. v. Taylor was, "The substance and consummation of the occurrence which gave rise to the cause of action took place on land." 276 U.S. at 182, 48 S.Ct. at 229.
 
 
 57
 I make no suggestion that there is a simple consistency to be found in the reasoning of all these cases.
 
 
 58
 Harsh facts frequently appear to have affected results. The Smith & Son case, for example, preceded the effective date of the federal Longshoremen's Compensation Act and upheld a state compensation award. The holding of the court was to deny that "the case is exclusively within admiralty jurisdiction" as appellants therein were claiming. T. Smith & Son, Inc. v. Taylor, 276 U.S. 179, 182, 48 S.Ct. 228, 72 L.Ed. 520 (1928) (emphasis added). And as we have noted above, Congress, in passing the Admiralty Extension Act of 1948, acted to extend admiralty jurisdiction so as to eliminate the holding of The Plymouth, supra.
 
 
 59
 Among the older cases, we find the most careful approach and reasoning in the Imbrovek case where Chief Justice Hughes said:
 
 
 60
 "The principal question is whether the District Court had jurisdiction; that is, whether the cause was one 'of admiralty and maritime jurisdiction.' Const. Art. III, Sec. 2; Rev.Stat. Sec. 563; Judicial Code, Sec. 24; Act of Sept. 24, 1789, c. XX, Sec. 9, 1 Stat. 73, 76. As the injury occurred on board a ship while it was lying in navigable waters, there is no doubt that the requirement as to locality was fully met. The petitioner insists, however, that locality is not the sole test, and that it must appear that the tort was otherwise of a maritime nature. And this was the view taken by the Circuit Court of Appeals for the Ninth Circuit, in affirming a decree dismissing a libel for want of jurisdiction in a similar case. Campbell v. [H.] Hackfeld & Co., 125 Fed.Rep. 696.
 
 
 61
 "At an early period the court of admiralty in England exercised jurisdiction 'over torts, injuries, and offences, in ports within the ebb and flow of the tide, on the British seas and on the high seas.' De Lovio v. Boit, 2 Gall. 398, 406, 464, 474 [Fed.Cas.No.3,776]. While its authority was denied when the injurious action took place infra corpus comitatus, it was not disputed that jurisdiction existed when the wrong was done 'upon the sea, or any part thereof which is not within any county.' (4 Inst. 134.) The jurisdiction in admiralty of the courts of the United States is not controlled by the restrictive statutes and judicial prohibitions of England (Waring v. Clarke, 5 How. 441, 457, 458 [12 L.Ed. 226]; Insurance Company v. Dunham, 11 Wall. 1, 24 [20 L.Ed. 90]; The Lottawanna, 21 Wall. 558, 576 [22 L.Ed. 654]); and the limitation with respect to torts committed within the body of any county is not applicable here. Waring v. Clarke, supra; The Magnolia, 20 How. 296 [15 L.Ed. 909]. 'In regard to torts'-said Mr. Justice Story in Thomas v. Lane, 2 Sumn. 1, 9 [Fed.Cas.No.13,902]-'I have always understood, that the jurisdiction of the Admiralty is exclusively dependent upon the locality of the act. The Admiralty has not, and never (I believe) deliberately claimed to have any jurisdiction over torts, except such as are maritime torts, that is, such as are committed on the high seas, or on waters within the ebb and flow of the tide.' This rule-that locality furnishes the test-has been frequently reiterated, with the substitution (under the doctrine of The Genesee Chief, 12 How. 443 [13 L.Ed. 1058]), of navigable waters for tide waters. Thus, in the case of The Philadelphia, Wilmington & Baltimore R. R. Co. v. The Philadelphia & Havre de Grace Steam Towboat Co., 23 How. 209, 215 [16 L.Ed. 433], the court said: 'The jurisdiction of courts of admiralty, in matters of contract, depends upon the nature and character of the contract; but in torts, it depends entirely on locality.' Again in the case of The Plymouth, 3 Wall. 20 [18 L.Ed. 125], where jurisdiction was denied upon the ground that the substance and consummation of the wrong took place on land and not on navigable water, the court said, p. 35: 'The jurisdiction of the admiralty over maritime torts does not depend upon the wrong having been committed on board the vessel, but upon its having been committed upon the high seas or other navigable waters.-A trespass on board of a vessel, or by the vessel itself, above tide-water, when that was the limit of jurisdiction, was not of admiralty cognizance. The reason was, that it was not committed within the locality that gave the jurisdiction. The vessel itself was unimportant * * *. The jurisdiction of the admiralty does not depend upon the fact that the injury was inflicted by the vessel, but upon the locality-the high seas, or navigable waters where it occurred. Every species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance.' See Manro v. Almeida, 10 Wheat. 473 [6 L.Ed. 369]; Waring v. Clarke, supra, [5 How.] p. 459; The Lexington, [New Jersey Steam Navigation Co. v. Merchants' Bank of Boston], 6 How. 344, 394 [12 L.Ed. 465]; The Commerce, 1 Black, 574, 579 [17 L.Ed. 107]; The Rock Island Bridge, 6 Wall. 213, 215 [18 L.Ed. 753]; The Belfast, 7 Wall. 624, 637 [19 L.Ed. 266]; Ex parte Easton, 95 U.S. 68, 72 [24 L.Ed. 373]; Leathers v. Blessing, 105 U.S. 626, 630 [26 L.Ed. 1192]; Panama Railroad v. Napier Shipping Co., 166 U.S. 280, 285 [17 S.Ct. 572, 41 L.Ed. 1004]; The Blackheath, 195 U.S. 361, 365, 367 [25 S.Ct. 46, 49 L.Ed. 236]; Cleveland Terminal & Valley R. R. Co. v. Cleveland Steamship Co., 208 U.S. 316, 319 [28 S.Ct. 414, 52 L.Ed. 508]; Martin v. West, 222 U.S. 191 [32 S.Ct. 42, 56 L.Ed. 159]; The Neil Cochran, Fed. Cas.No. 10,087; The Ottawa, Fed.Cas. No.10,616; Holmes v. O. & C. Rwy. Co., [D.C.] 5 Fed.Rep. 75, 77; The Arkansas, [D.C.] 17 Fed.Rep. 383, 384; The F. & P.M. No. 2, [D.C.] 33 Fed.Rep. 511, 513; The H.S. Pickands, [D.C.] 42 Fed.Rep. 239, 240; Hermann v. Port Blakely Mill Co., [D.C.] 69 Fed.Rep. 646, 647; The Strabo, [D.C.] 90 Fed.Rep. 110; 2 Story on the Constitution, Sec. 1666. It is also apparent that Congress in providing for the punishment of crimes committed upon navigable waters has regarded the locality of the offense as the basis for the exercise of its authority. Act of April 30, 1790, c. IX, Sec. 8, 1 Stat. 112, 113; Act of March 3, 1825, c. LXV, 4 Stat. 115; Rev.Stat. Secs. 5339, 5345, 5346; Criminal Code, Sec. 272, 35 Stat. 1088, 1142; United States v. Bevans, 3 Wheat. 336, 387 [4 L.Ed. 404]; United States v. Wiltberger, 5 Wheat. 76 [5 L.Ed. 37]; United States v. Rodgers, 150 U.S. 249, 260, 261, 285 [14 S.Ct. 109, 37 L.Ed. 1071]; Wynne v. United States, 217 U.S. 234, 240 [30 S.Ct. 447, 54 L.Ed. 748].
 
 
 62
 "But the petitioners urge that the general statements which we have cited, with respect to the exclusiveness of the test of locality in cases of tort, are not controlling; and that in every adjudicated case in this country in which the jurisdiction of admiralty with respect to torts has been sustained, the tort apart from the mere place of its occurrence has been of a maritime character. It is asked whether admiralty would entertain a suit for libel or slander circulated on board a ship by one passenger against another. See Benedict, Admiralty, 4th ed., Sec. 231. The appropriate basis, it is said, of all admiralty jurisdiction, whether in contract or in tort, is the maritime nature of the transaction or event; it is suggested that the wider authority exercised in very early times in England may be due to its antedating the recognition by the common-law courts of transitory causes of action and thus arose by virtue of necessity.
 
 
 63
 "We do not find it necessary to enter upon this broad inquiry. As this court has observed, the precise scope of admiralty jurisdiction is not a matter of 'obvious principle or of very accurate history,' The Blackheath, supra. And we are not now concerned with the extreme cases which are hypothetically presented. Even if it be assumed that the requirement as to locality in tort cases, while indispensable, is not necessarily exclusive, still in the present case the wrong which was the subject of the suit was, we think, of a maritime nature and hence the District Court, from any point of view, had jurisdiction. The petitioner contends that a maritime tort is one arising out of an injury to a ship caused by the negligence of a ship or a person or out of an injury to a person by the negligence of a ship; that there must either be an injury to a ship or an injury by the negligence of the ship, including therein the negligence of her owners or mariners; and that, as there was no negligence of the ship in the present case, the tort was not maritime. This view we deem to be altogether too narrow.
 
 
 64
 "The libelant was injured on a ship, lying in navigable waters, and while he was engaged in the performance of a maritime service. We entertain no doubt that the service in loading and stowing a ship's cargo is of this character. Upon its proper performance depend in large measure the safe carrying of the cargo and the safety of the ship itself; and it is a service absolutely necessary to enable the ship to discharge its maritime duty. Formerly the work was done by the ship's crew; but owing to the exigencies of increasing commerce and the demand for rapidity and special skill, it has become a specialized service devolving upon a class 'as clearly identified with maritime affairs as are the mariners.' See The George T. Kemp, 2 Lowell, 477, 482 [Fed.Cas.No.5,341]; The Circassian, 1 Ben. 209 [Fed.Cas.No.2,722]; The Windermere, [D.C.] 2 Fed.Rep. 722; The Canada, [D.C.], 7 Fed.Rep. 119; The Hattie M. Bain, [D.C.], 20 Fed.Rep. 389; The Gilbert Knapp, [D. C.] 37 Fed.Rep. 209; The Main, [5 Cir.] 51 Fed.Rep. 954; Norwegian Steamship Co. v. Washington, [5 Cir.] 57 Fed.Rep. 224; The Seguranca, [D.C.] 58 Fed.Rep. 908; The Allerton, [D.C.] 93 Fed.Rep.219; Hughes, Adm. 113; Benedict, Adm., 4th ed., Sec. 207. The libelant was injured because the care required by the law was not taken to protect him while he was doing this work. We take it to be clear that the District Court sitting in admiralty was entitled to declare the applicable law in such a case, as it was within the power of Congress to modify that law. Waring v. Clarke, supra; The Lottawanna, supra. The fact that the ship was not found to be liable for the neglect is not controlling. If more is required than the locality of the wrong in order to give the court jurisdiction, the relation of the wrong to maritime service, to navigation and to commerce on navigable waters, was quite sufficient." Atlantic Transport Co. v. Imbrovek, 234 U.S. 52, 58-62, 34 S.Ct. 733, 58 L.Ed. 1208 (1914). (Emphasis added.)
 
 
 65
 The more modern and more liberal interpretation of the scope of admiralty jurisdiction is perhaps best illustrated in Calbeck v. Travelers Insurance Co., 370 U.S. 114, 117, 82 S.Ct. 1196, 1198, 8 L.Ed.2d 368 (1962), where the Court said:
 
 
 66
 "Our conclusion is that Congress invoked its constitutional power so as to provide compensation for all injuries sustained by employees on navigable waters whether or not a particular injury might also have been within the constitutional reach of a state workmen's compensation law." (Emphasis added and footnote omitted.)
 
 
 67
 In the most recent decision concerning admiralty jurisdiction, the Court continued its expansion of the effective boundaries of admiralty. Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). In foreshadowing probable application of the Death on the High Seas Act to deaths on territorial waters, the Court said:
 
 
 68
 "However, it is sufficient at this point to conclude, as Mr. Justice Holmes did 45 years ago, that the work of the legislatures has made the allowance of recovery for wrongful death the general rule of American law, and its denial the exception. Where death is caused by the breach of a duty imposed by federal maritime law, Congress has established a policy favoring recovery in the absence of a legislative direction to except a particular class of cases." Id. at 393, 90 S.Ct. at 1783.
 
 SIXTH CIRCUIT ADMIRALTY CASES
 
 69
 In Smith v. Lampe, 64 F.2d 201 (6th Cir.), cert, denied, 289 U.S. 751, 53 S. Ct. 695, 77 L.Ed. 1496 (1933), Judge Simons stated the traditional test of maritime jurisdiction for this Circuit saying, "Where the negligent act originates on land and the damage occurs on water, the cause of action is within the admiralty jurisdiction." Id. at 202.
 
 
 70
 Essentially, this view was reiterated in Interlake Steamship Company v. Nielsen, 338 F.2d 879 (6th Cir. 1964), cert. denied, 381 U.S. 934, 85 S.Ct. 1765, 14 L.Ed.2d 699 (1965), in upholding admiralty jurisdiction over a harbor worker's federal compensation case where in a ship's custodian was killed when in the course of his employment he drove a car off the end of the dock where his ship was berthed.
 
 
 71
 The District Judge in dismissing the instant complaint for lack of jurisdiction relied strongly upon language found in more recent opinions of this court in Chapman v. City of Grosse Pointe Farms, 385 F.2d 962 (6th Cir. 1967), and Wiper v. Great Lakes Engineering Works, 340 F.2d 727 (6th Cir.), cert. denied, 382 U.S. 812, 86 S.Ct. 28, 15 L.Ed. 2d 60 (1965). The District Judge read these cases as accepting the proposition that the locus of the tortious conduct, rather than the locus of the damage, was the determining factor in relation to admiralty jurisdiction. While there is dictum in Wiper (a drowning case alleging faulty maintenance of a pier) which lends some support to this conclusion, we believe that Chapman adopted (and arguably extended) the rationale of the Imbrovek case which is quoted above. The holding in Chapman was:
 
 
 72
 "While the locality alone test should properly be used to exclude from admiralty courts those cases in which the tort giving rise to the lawsuit occurred on land rather than on some navigable body of water, it is here determined that jurisdiction may not be based solely on the locality criterion. A relationship must exist between the wrong and some maritime service, navigation or commerce on navigable waters." Chapman v. City of Grosse Pointe Farms, supra, at 966.
 
 
 73
 In Gowdy v. United States, 412 F.2d 525 (6th Cir.), cert. denied, 396 U.S. 960, 90 S.Ct. 437, 24 L.Ed.2d 425 (1969), two judges reiterated the Chapman rule in the context of a tort case where a workman fell from the flat roof of a lighthouse building to the ground. The lighthouse was at the end of a land-connected breakwater, and the opinion of the court found no maritime character to the tort claim which alleged negligent maintenance of the roof.
 
 
 74
 The holding of Chapman has been praised in The American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts, Sec. 232 (1969), which presents the point of view of critics of the "locality alone" test. It is interesting to note, however, that even the Restatement (Second) of Conflict of Laws with its emphasis upon the state of the most significant relationship to the occurrence and the parties gives a distinct preference to "the local law of the state where the injury occurred" in tort actions involving both personal injury and property damage. Restatement (Second) of Conflict of Laws Secs. 146 and 147 (1971).
 
 
 75
 I think, however, that the proper application of Chapman to the facts of our instant case is best shown by the language it employed to distinguish aircraft crash cases-more particularly, the Weinstein case:
 
 
 76
 "It might be said that some relationship between the alleged wrong and maritime service, navigation or commerce on navigable waters, is a condition sub silentio to admiralty jurisdiction. Indeed, in Weinstein v. Eastern Airlines, Inc., 316 F.2d 758 (3rd Cir. 1963), a wrongful death case arising from a plane crash into Boston Harbor, the court was able to reconcile McGuire, supra, with its conclusion that locality of the injury was the exclusive determinant of admiralty jurisdiction (p. 763, n. 13):
 
 
 77
 "'The result reached in McGuire v. City of New York, 192 F.Supp. 866 (S.D.N.Y.1961) may well be compatible with the "locality alone" test. To say that a person bathing in the shallow, and probably unnavigable in fact, waters of a public beach is within the locus of admiralty jurisdiction would be to distort the meaning of the locality test beyond what reason and policy would suggest or require.'
 
 
 78
 "In making this concession, it appears that Weinstein does in fact accept the 'locality plus' test, notwithstanding the declaration as to the propriety of the 'locality alone' criterion. In addition, the court also noted that aircraft had become 'a major instrument of travel and commerce over and across' navigable waters, and that the dangers of plane crashes into navigable waters 'are much the same as those arising out of the sinking of a ship or a collision between two vessels.' Id. at 763." Chapman v. City of Grosse Pointe Farms, supra, at 966.
 
 HOLDING
 
 79
 I regret that I cannot agree with the majority holding in this case. There is nothing more maritime than the sea. Pure Oil Co. v. Snipes, 293 F.2d 60, 65 at n. 6 (5th Cir. 1961).
 
 
 80
 I believe that there are many comparisons between the problems of aircraft over navigable waters and those of the ships which the aircraft are rapidly replacing. We should take judicial notice that thousands of flights of aircraft take off daily (many from waterfront airports like Cleveland's Burke Lakefront) with flights planned over the oceans or over the Great Lakes.
 
 
 81
 I have previously noted that Congress appears to have thought that admiralty jurisdiction attached solely by flight over the high seas. We have, however, no need to go that far in our instant case. We deal here with a disabled plane which crashed upon and sank into the navigable waters of the Great Lakes. Problems posed for aircraft landing on, crashing on, or sinking into navigable waters differ markedly from landings upon land. Arguably, they might be greater or less, but they are not the same. In such instances, wind and wave and water, the normal problems of the mariner, become the approach or survival problems of the pilot and his passengers. I do not, by referring generally to these matters as being within judicial notice, mean to pass judgment on jurisdictional problems beyond the specific requirements of this case. What I would hold is that tort cases arising out of aircraft crashes into navigable waters are cognizable in admiralty jurisdiction even if the negligent conduct is alleged to have happened wholly on land. By so doing, we would follow the reasoning and result of the Imbrovek case and apply it to the facts of this case:
 
 
 82
 "If more is required than the locality of the wrong in order to give the court jurisdiction, the relation of the wrong to maritime service, to navigation, and to commerce on navigable waters, was quite sufficient." Atlantic Transport Co. v. Imbrovek, 234 U.S. 52, 62, 34 S.Ct. 733, 735, 58 L.Ed. 1208 (1914).
 
 
 83
 Here the aircraft took off from a shorefront airport; its flight path led over navigable waters (if only for a brief distance); when disabled it fell into navigable waters; and the damage complained of is damage occasioned by crashing into and sinking into navigable waters.[4]
 
 
 84
 We cannot by any means be sure that the Supreme Court will not adhere or revert to the "locality alone" test, but in the meantime we should note that there is some maritime character to any flight of any airplane over any navigable water.
 
 
 85
 If, as a result of shore-based negligence in dry dock, a sea valve were left open on a deep-water vessel, would anyone doubt admiralty jurisdiction over cases arising from its subsequent sinking?
 
 
 86
 I think we should adopt the Third Circuit rule of Weinstein, supra.
 
 
 87
 "We hold, therefore, that tort claims arising out of the crash of a landbased aircraft on navigable waters within the territorial jurisdiction of a state are cognizable in admiralty." 316 F.2d at 766.
 
 
 88
 This would not require endorsing its "locality alone" test, but, as is obvious from what has been said, I would accept fully much of Judge Biggs' reasoning, including the following:
 
 
 89
 "Assuming arguendo that some kind of maritime nexus in addition to locality is required as a prerequisite to admiralty tort jurisdiction, we believe nonetheless that the cases at bar are within the admiralty jurisdiction insofar as the tort claims alleged therein are concerned. At the time the Constitution was framed and for a century and a half thereafter, ships of various kinds were the only means of transportation and commerce on or across navigable waters. Today, aircraft have become a major instrument of travel and commerce over and across these same waters. When an aircraft crashes into navigable waters, the dangers to persons and property are much the same as those arising out of the sinking of a ship or a collision between two vessels." Id. at 763.
 
 
 90
 Aside from Weinstein, supra, and Scott v. Eastern Air Lines, Inc., 399 F.2d 14 (3d Cir.), cert. denied, 393 U.S. 979, 89 S.Ct. 446, 21 L.Ed.2d 439 (1968), where the Third Circuit reaffirmed Weinstein, there is no precedent squarely in point concerning airplane crashes in navigable waters of a state either from the Circuit Courts of Appeal or the United States Supreme Court. But there are many District Court cases, both before and after Weinstein, which have reached the same result. Hornsby v. Fishmeal Co., 285 F.Supp. 990, 993 (W.D.La.1968), rev'd on other grounds, 431 F.2d 865 (5th Cir. 1970); Rapp v. Eastern Air Lines, Inc., 264 F.Supp. 673 (E.D.Pa. 1967), aff'd sub nom. Scott v. Eastern Air Lines, Inc., 399 F.2d 14 (3d Cir.), cert. denied, 393 U.S. 979, 89 S.Ct. 446, 21 L.Ed.2d 439 (1968); Horton v. J & J Aircraft, Inc., 257 F.Supp. 120, 121 (S.D.Fla.1966); Montgomery v. Goodyear Tire & Rubber Co., 231 F.Supp. 447, 453 (S.D.N.Y.1964), aff'd, 392 F.2d 777 (2d Cir. 1968); Harris v. United Air Lines, 275 F.Supp. 431 (S.D.Iowa 1967). See also Stiles v. National Airlines, Inc., 161 F.Supp. 125 (E.D.La.1958), aff'd, 268 F.2d 400 (5th Cir.), cert. denied, 361 U.S. 885, 80 S.Ct. 157, 4 L.Ed.2d 121 (1959); Noel v. Airponents, Inc., 169 F.Supp. 348 (D.N.J.1958); Bergeron v. Aero Associates, Inc., 213 F.Supp. 936 (E.D.La.1963); Wilson v. Transocean Airlines, 121 F.Supp. 85 (N.D.Cal.1954).
 
 
 91
 For the reasons outlined, I would reverse and remand the judgment of the District Court.
 
 
 
 [1]
 A wharf is an extension of land and not within the jurisdiction of admiralty. Rodrigue v. Aetna Casualty & Surety Co., 395 U.S. 352, 360, 89 S.Ct. 1835, 23 L.Ed. 2d 360
 
 
 [1]
 Weinstein has subsequently been reaffirmed by the Third Circuit in Scott v. Eastern Air Lines, Inc., 399 F.2d 14 (3d Cir.), cert. denied, 393 U.S. 979, 89 S.Ct. 446, 21 L.Ed.2d 439 (1968), and has been cited and followed by a number of District Courts: Hornsby v. Fishmeal Co., 285 F.Supp. 990, 993 (W.D.La.1968), rev'd on other grounds, 431 F.2d 865 (5th Cir. 1970); Rapp v. Eastern Airlines, Inc., 264 F.Supp. 673 (E.D.Pa. 1967) (aff'd by Scott, supra); Horton v. J & J Aircraft, Inc., 257 F.Supp. 120 (S.D.Fla.1966); Montgomery v. Goodyear Tire & Rubber Co., 231 F.Supp. 447, 453 (S.D.N.Y.1964), aff'd, 392 F.2d 777 (2d Cir. 1968); Harris v. United Air Lines, 275 F.Supp. 431 (S.D.Iowa 1967)
 
 
 [2]
 See also Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), overruling The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), recognizing a remedy for wrongful death under general maritime law, and allowing application of the Death on the High Seas Act to similar death cases in territorial waters
 
 
 [3]
 We here employ "sea" in the sense of navigable waters
 
 
 [4]
 I attach no significance to the fact that the descending plane struck the top of a truck and the perimeter fence of the airport before crashing into Lake Erie. This record makes clear that the impact on the water and the sinking of the plane with its consequent water damage accomplished the destruction complained of